Gena C. ROSSINI *v.* DIRECTOR, Arkansas Employee Security Department and Arkansas Democrat-Gazette

E 02-166                                        101 S.W.3d 266

Court of Appeals of Arkansas
Divisions IV and I
Opinion delivered March 19, 2003

*Goheen Legal Services, LLC,* by: *Robert (Jake) Goheen,* for appellant.

*Phyllis Edwards,* for appellee.

TERRY CRABTREE, Judge. After being terminated from her job, the appellant, Gena C. Rossini, sought unemployment benefits from the Arkansas Employment Security Department. When the Department denied her benefits, she appealed the decision to the Arkansas Appeal Tribunal. On March 13, 2002, the Appeal Tribunal reversed the Department's determination and awarded her benefits. On June 13, 2002, the

Board of Review reversed the Appeal Tribunal and denied appellant unemployment benefits after finding that she was discharged from her last work for misconduct in connection with the work. For our review, appellant maintains that the Board of Review erred: (1) when it reversed the Appeal Tribunal's decision "based on the receipt of no new evidence;" (2) when it relied heavily on a fax sent by appellant to appellee after she was terminated; (3) when it incorrectly interpreted the testimony of the witnesses; (4) when it failed to recognize "the everyday use of foul language;" and (5) when it failed to acknowledge the absence of an investigation in which both parties were able to explain the event that lead to appellant's termination. We affirm.

Appellant worked as a salesperson for the appellee, the *Arkansas Democrat-Gazette*, for one and one-half years. On the morning of March 1, 2002, appellant and her coworker, Dennis Perkins, an account executive, became involved in a verbal disagreement about a customer's account. Appellant claims that during the argument Perkins called her a b——. She testified that she responded by calling him a pansy a——. Their supervisor, Robert Shearon, who observed the confrontation, testified that he told them to calm down. Shearon stated that "at that point [appellant] started calling [Perkins] some names, including 'a kid who couldn't make a sale.'" Shearon also stated that appellant then called Perkins an a——hole and left the building. Approximately an hour later, appellee paged appellant and informed her that she was terminated.

As an initial matter, we must note that appellant did not make three of her arguments below that she now complains of on appeal. The record does not reflect that appellant argued (1) that the Board should not consider the fax she sent to appellee, (2) that the Board should recognize the everyday use of foul language, or (3) that the Board should acknowledge the absence of an investigation in which both parties were able to explain the event that lead to her termination. We decline to address the merits of these arguments. They were not made below, and this court does not consider issues raised for the first time on appeal. *Rucker v. Price*, 52 Ark. App. 126, 915 S.W.2d 315 (1996); *Perdrix-Wang v. Director*, 42 Ark. App. 218, 856 S.W.2d 636 (1993).

For appellant's remaining two points on appeal, she essentially complains that substantial evidence did not support the Board's decision. The findings of the Board of Review are con-

clusive if they are supported by substantial evidence. *Walls v. Director*, 74 Ark. App. 424, 49 S.W.3d 670 (2001). Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. *Id.* We review the evidence and all reasonable inferences deducible therefrom in the light most favorable to the Board's findings. *Lovelace v. Director*, 78 Ark. App. 127, 79 S.W.3d 400 (2002). Even when there is evidence upon which the Board might have reached a different decision, the scope of judicial review is limited to a determination of whether the Board could reasonably reach its decision upon the evidence before it. *Id.*

An individual shall be disqualified for unemployment benefits if she is discharged from her last work for misconduct in connection with the work. Ark. Code Ann. § 11-10-514(a)(1) (Repl. 1999). "Misconduct," for purposes of unemployment compensation, involves: (1) disregard of the employer's interest; (2) violation of the employer's rules; (3) disregard of the standards of behavior which the employer has a right to expect of his employees; and (4) disregard of the employee's duties and obligations to his employer. *Greenberg v. Director*, 53 Ark. App. 295, 922 S.W.2d 5 (1996). To constitute misconduct, however, the definitions require more than mere inefficiency, unsatisfactory conduct, failure in good performance as the result of inability or incapacity, inadvertencies, ordinary negligence in isolated instances, or good faith error in judgment or discretion. *Carraro v. Director*, 54 Ark. App. 210, 924 S.W.2d 819 (1996). There must be an intentional or deliberate violation, a willful or wanton disregard, or carelessness or negligence of such degree or recurrence as to manifest wrongful intent or evil design. *Id.* In sum, there is an element of intent associated with a determination of misconduct. *Rollins v. Director*, 58 Ark. App. 58, 945 S.W.2d 410 (1997).

Appellee's employment policy states that disciplinary action, including discharge, may occur for violation of company rules and regulations including insubordination, using abusive language, and interfering with fellow employees or their work. Appellant received a copy of appellee's rules, regulations, and policies at the time she was hired. At the hearing, appellant admitted that she used abusive language toward Perkins during their argument. She attempted to justify her actions by claiming that Perkins called her a name. Appellant's supervisor, Robert Shearon,

testified that Perkins did not call appellant any name during the argument. The Board of Review found that "the record contains no evidence other than [appellant's] which would support her assertion that [Perkins] called her a 'b———.'" We recognize that the credibility of witnesses and the weight to be accorded their testimony are matters to be resolved by the Board. *Niece v. Director*, 67 Ark. App. 109, 992 S.W.2d 169 (1999).

It is undisputed that appellant chose to continue using abusive language even after her supervisor instructed her and Perkins to calm down. The Board of Review found appellant's behavior to be intentional as she sought to belittle Perkins in front of others in the office. The Board also noted the fact that appellant sent a fax to appellee hours after she was terminated in which she referred to Perkins as "your boy" and stated, "[a]t this point, I'm reasonable to deal with. By Monday, who knows[?]"

We distinguish this case from *Rollins, supra*, where we reversed the Board of Review's finding that a claimant had committed misconduct. In that case, the claimant told a coworker to stop meddling in her business and to shut up. *Id*. The Board found those words were harsh and provocative. *Id*. However, we did not believe that they rose to the level of misconduct as defined by the statute.

By contrast in the case at bar, we agree with the Board that appellant's actions were malicious and contained willful intent. Her statements to Perkins reflect more than a lack of judgment. Even after the supervisor, Shearon, instructed appellant and Perkins to "calm down," she continued with her verbal attacks and abusive language. This is clear evidence of a deliberate violation of appellee's rules and standard of behavior that appellee had a right to expect.

Based upon our review of the evidence, we hold that substantial evidence supports the Board's decision that appellant was discharged from her last work for misconduct in connection with the work.

Affirmed.

PITTMAN, GLADWIN, and BAKER, JJ., agree.

HART and ROAF, dissent.

ANDREE LAYTON ROAF, Judge, dissenting. I do not believe that the Board of Review's decision to deny Gena C. Rossini's claim for unemployment benefits based upon misconduct is supported by substantial evidence or by our case law. The sole basis for Rossini's termination was that she called a male coworker a name during a heated argument over an account, in the presence of two other male employees, including her supervisor. Rossini testified that the coworker first called her a name but he denied this, and the others present testified that they did not hear it. There is extensive testimony in the record about the common use of profanity by employees in this department, including prior use by Rossini and the coworker involved in the dispute with her. Rossini had not been warned or reprimanded when she used the "F" word in anger in the presence of the supervisor two months before her termination. The policy Rossini was alleged to have violated prohibited "committing immoral acts, using abusive language or making racial slurs." Although the Board of Review and the majority do not find *Rollins v. Director*, 58 Ark. App. 58, 945 S.W.2d 410 (1997), controlling , I disagree. Moreover, *Reynolds v. Daniels, Director*, 1 Ark. App. 262, 614 S.W.2d 525 (1981), is distinguishable, because it found *unprovoked* profanity directed at the employee's *immediate supervisor* to be misconduct.

In *Rollins*, this court found that harsh words spoken by an employee to a coworker immediately preceding a fight may have been spoken in poor judgment, but did not rise to the level of misconduct as defined by statute and the court. In this instance, Rossini's actions in tossing off a parting comment at her coworker while retreating from the encounter certainly did not rise to the level of the provocative and confrontational encounter described in *Rollins*, and was not directed at her supervisor as was the profanity used in *Reynolds*. As in *Rollins*, Rossini's words may have been spoken out of lack of judgment, but in the circumstances do not show malicious or willful intent or a recurrence of poor judgment so as to constitute misconduct.

HART, J., joins.