Sharon A. JOHNSON *v.* DIRECTOR of the Arkansas Employment Security Department and Beverly Health

E 03-48 141 S.W.3d 1

Court of Appeals of Arkansas
Divisions I, II and III
Opinion delivered January 14, 2004

*Claudell Woods*, for appellant.

*Phyllis A. Edwards*, for appellee.

TERRY CRABTREE, Judge. The appellant, Sharon Johnson, brings this appeal from a decision of the Board of Review denying her claim for unemployment benefits based on a finding that she was discharged for misconduct in connection with the work. On appeal, she contends that the Board's decision is not supported by substantial evidence. We disagree and affirm.

Arkansas Code Annotated section 11-10-514(a)(1)(Repl. 2002) provides that an individual shall be disqualified for benefits if she is discharged for misconduct in connection with the work. Subsection (b) of the statute provides that, if the claimant is discharged for misconduct in connection with the work on account of a willful violation of bona fide rules or customs of the employer pertaining to the safety of fellow employees, persons, or company property, the claimant shall be disqualified from the date of filing the claim until the claimant shall have ten weeks of employment in each of which the claimant shall have earned wages equal to at least his weekly benefit amount.

"Misconduct," for purposes of unemployment compensation, involves: (1)disregard of the employer's interest; (2) violation of the employer's rules; (3) disregard of the standards

of behavior which the employer has a right to expect; and (4) disregard of the employee's duties and obligations to his employer. *Rossini v. Director*, 81 Ark. App. 286, 101 S.W.3d 266 (2003). To constitute misconduct, however, the definitions require more than mere inefficiency, unsatisfactory conduct, failure in good performance as the result of inability or incapacity, inadvertencies, ordinary negligence in isolated instances, or good-faith errors in judgment or discretion. *Id.* Instead, there is an element of intent associated with a determination of misconduct. *Blackford v. Director*, 55 Ark. App. 418, 935 S.W.2d 311 (1996). There must be an intentional and deliberate violation, a willful and wanton disregard, or carelessness or negligence of such a degree or recurrence as to manifest wrongful intent or evil design. *Rossini v. Director*, *supra*. Misconduct contemplates a willful or wanton disregard of an employer's interest as is manifested in the deliberate violation or disregard of those standards of behavior which the employer·has a right to expect from its employees. *Blackford v. Director, supra*.

 Whether an employee's actions constitute misconduct in connection with the work sufficient to deny unemployment benefits is a question of fact for the Board. *Thomas v. Director*, 55 Ark. App. 101, 931 S.W.2d 146 (1996). Our standard of review of the Board's findings of fact is well-settled:

> We do not conduct a *de novo* review in appeals from the Board of Review. In appeals of unemployment compensation cases we instead review the evidence and all reasonable inferences deducible therefrom in the light most favorable to the Board of Review's findings. The findings of fact made by the Board of Review are conclusive if supported by substantial evidence; even when there is evidence upon which the Board might have reached a different decision, the scope of judicial review is limited to a determination of whether the Board could have reasonably reached its decision based on the evidence before it. Substantial evidence is such evidence as a reasonable mind might accept as adequate to support a conclusion.

*Snyder v. Director*, 81 Ark. App. 262, 263, 101 S.W.3d 270, 271 (2003). Additionally, the credibility of witnesses and the weight to be accorded their' testimony are matters to be resolved by the Board of Review. *Williams v. Director*, 79 Ark. App. 407, 88 S.W.2d 427 (2002).

The appellant in this case had worked for appellee Beverly Health in Camden, Arkansas, as an LPN since 1986 until she was terminated on October 16, 2002. Glenn Clark, the executive director of the nursing-home facility, testified that appellant was fired for violating Rule 1.1 of Beverly's progressive disciplinary system for resident "neglect" because of her failure to intervene on behalf of a resident. Mr. Clark explained that appellant had worked the 11:00 p.m. to 7:00 a.m. shift on October 13-14 when at around 5:00 a.m. she made an entry into a resident's medical chart that she was unable to obtain bowel sounds. Clark said that, when bowel sounds are not detected, standard protocol called for an LPN to locate another nurse to listen for bowel sounds, and that if none were heard, a physician was to be alerted immediately and the resident's family and the director of nursing were to be notified. Appellant, however, took no further steps after making the entry in the resident's chart. Another nurse was not called in, and a doctor was not notified. Clark said that, when he asked appellant why she had not intervened on behalf of the resident, appellant responded that she "just didn't." Clark testified that listening for bowel sounds was a basic part of the physical assessment LPN's were required to perform and that employees were notified through in-service training of the proper procedure to follow when bowel sounds are not heard. Clark further testified that appellant had a history of not attending in-service training sessions. He said that appellant's failure to follow protocol in this instance was a category-one violation and that employees are advised that they could be discharged for a single category-one violation. Clark also testified that appellant's infraction was required by law to be reported to the Office of Long-Term Care and that the Office of Long-Term Care had reported the incident to the State Board of Nursing. Additionally, Clark testified that the absence of bowel sounds was an indication that something was wrong internally, such as renal failure, and that the resident in question was admitted into the hospital later that day with renal failure.

Appellant testified that the resident in question had been complaining for a week. She said that she heard the patient moaning that morning and that she took her vital signs which were within normal limits. She said that the resident told her that she was fine but that she also said that "I just don't feel good." Appellant denied that her training and experience required her to do anything after being unable to detect bowel sounds. She said that, based on experience, she knew when to call a doctor and that

she did not feel that the resident in question was in such distress as to be in need of a doctor. Appellant testified that her immediate supervisor had only given her verbal counseling over this incident but that her supervisor had also told her that she should have called a doctor. She admitted that she had not attended the last in-service training and that she had been written up in the past for not attending training sessions.

On this evidence, the Board determined that appellant was discharged for misconduct, finding that appellant had willfully violated the employer's rules pertaining to the safety of persons. Appellant contends on appeal that this finding is not supported by substantial evidence.

In *St. Vincent Infirmary v. Daniels*, 271 Ark. 654, 609 S.W.2d 675 (Ark. App. 1980), two employees who worked at the hospital's day-care center were discharged for leaving the workplace one afternoon to attend to personal business. We concluded that this single incident of leaving work amounted to misconduct because the employees had left without permission and without clocking out; because they were absent during a busy time of day at a time that did not correspond to their lunch hour; and, most significantly, because their absence placed the day care in violation of regulations concerning the ratio of adult employees to the number of children present. We held that the employees' acts were intentional and displayed a substantial disregard for their employer's interests and their own duties and obligations.

In *Beck v. Director*, 65 Ark. App. 8, 987 S.W.2d 733 (1999), a nurse violated the hospital's policy regarding the dispensation of narcotics. The hospital's procedure for dispensing narcotics required the nurse to sign out the medication in the narcotics book, noting both the date and the time, and then to give the medicine to the patient. The nurse admittedly violated this rule one day by not documenting the medication as it was given. Instead, she waited until the end of her shift and attempted to complete the necessary documentation from memory. Several days before, the nurse had also failed to consult a patient's chart prior to dispensing a dose of Darvocet, which resulted in the patient's receiving the medication at the wrong time. On this record, we rejected the nurse's contention that her conduct was nothing more than a good-faith error in judgment and held that her actions were not only in violation of the employer's rules, but that her conduct constituted a disregard of the employer's interests and the standard

of behavior the employer had a right to expect, and a disregard of her duties and the obligations that she owed to her employer.

In this case, the sole issue before us is whether the Board could reasonably conclude that appellant's actions rose to the level of misconduct. When the evidence is viewed in the appropriate light, we are unable to say that there is no substantial evidence to support the Board's finding. The testimony reflects that listening for bowel sounds was a basic component of the physical assessment nurses were required to perform. The nursing home had established a procedure that was to be followed in the event a nurse was unable to detect bowel sounds in order to ensure the protection of its residents' health and well-being. This proce- dure reflects that the absence of bowel sounds was deemed serious enough to warrant immediate attention and the notification of a physician. The procedure does not allow for the exercise of independent judgment or discretion on the part of nurses to depart from its requirements. When asked soon after the incident why she did not follow protocol, appellant offered no explanation other than to say that she "just didn't." We think the Board could reasonably conclude that appellant's failure to follow protocol was a dereliction of duty that was wanton and willful and that her inaction amounted to a violation of the employer's rules, a disregard of the employer's interest, a disregard of the standards of behavior the employer had a right to expect, as well as a disregard of the appellant's duties and obligations to her employer. Although appellant suggests that Mr. Clark's testimony was entitled to little weight and that we should accept her testimony that she did not neglect the resident, it is not our function to determine the weight and credibility of the testimony, as those matters are for the Board to assess. *See Williams v. Director, supra.* The Board chose to lend more credence to Clark's testimony than that of the appellant, which was its prerogative.

Affirmed.

STROUD, C.J., and PITTMAN, ROBBINS, and NEAL, JJ., agree.

GRIFFEN, GLADWIN, BAKER, and ROAF, JJ., dissent.

WENDELL L. GRIFFEN, Judge, dissenting. I respectfully dissent because I believe that appellant's conduct did not

rise to the level of a wrongful intent, evil design, or an intentional disregard of the employer's interest. Therefore, I would reverse and remand for the award of benefits.

The facts are as follows. Appellant had worked for the employer for approximately sixteen years. She had been an LPN for more than twenty-two years. At the time of her termination, she worked the night shift, from 11 p.m. to 7 a.m. On October 14, 2002, between 5 and 6 a.m., appellant checked on a particular patient and did not hear any bowel sounds. She made an entry into the patient's chart accordingly. She talked to the patient, and the patient told her that she was fine, even though she was moaning throughout much of the night. Appellant took the patient's other vital signs and recorded them, but she did not call anyone else. On the next shift, appellant's supervisor checked the same patient again and noted bowel sounds. However, later during that same day, the patient had to be delivered to a hospital for renal failure. The supervisor counseled appellant, and, subsequently, the executive director of Beverly Health conducted an investigation which resulted in appellant's termination.

Appellant then applied for, but was denied unemployment benefits. She appealed to the Arkansas Appeal Tribunal, which reversed the denial of unemployment benefits. During the telephone hearing, Glenn Clark, the executive director of Beverly Health, testified that appellant failed to follow company rules when she noticed that the patient in question had no bowel sounds, but did not take any further steps other than to record it in the chart. The procedures applicable when a nurse notices a lack of bowel sounds in a patient requires that the nurse call another nurse as a backup. If the second nurse also cannot hear any bowel activity, then a physician must be called immediately. The nurse must also contact the patient's family and the director of nursing services.

Clark testified that his employees are aware of these rules through in-service training and job descriptions. He stated that appellant never had a problem of this nature in the past. However, he mentioned an earlier incident in which appellant allegedly had failed to bring to her supervisor's attention a threat made by a nurse colleague toward a resident. On cross-examination, he also admitted that appellant had voiced concerns about salary in the past. Nonetheless, Clark explained that the only reason for termination was appellant's failure to follow the bowel-sound procedure in the

single event before her discharge. Beverly Health reported the incident to the Office of Long Term Care, which allegedly reported it to the State Board of Nursing.

Appellant testified that she had no previous disciplinary actions. She admitted that she did not report the lack of bowel sounds and offered her opinion that elderly people sometimes do not have bowel sounds and that there could be many reasons for that. She maintained that her actions that night were appropriate because the patient was not in distress. She emphasized that no one ever told her that nurses have no discretion in determining whether or not a patient was in distress. She also admitted that she did not attend the in-service training in August, and she added that no one ever said anything to her about it. She admitted that a few years earlier she had been written up for not attending in-service. Appellant claims that Clark treated her differently after she had discussed salary concerns with him prior to the incident that led to her termination.

After the Appeal Tribunal ruled in favor of appellant, her employer appealed to the Arkansas Board of Review, which reversed the Appeal Tribunal, with the result of denying appellant's unemployment benefits. Appellant then launched this appeal to our court.

Our scope of appellate review in cases such as this is well-settled:

> On appeal, the findings of the Board of Review are conclusive if they are supported by substantial evidence. Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. We review the evidence and all reasonable inferences deducible therefrom in the light most favorable to the Board's findings. Even when there is evidence upon which the Board might have reached a different decision, the scope of judicial review is limited to a determination of whether the Board could reasonably reach its decision upon the evidence before it.

*Fleming v. Director, Ark. Emp. Sec. Dep't*, 73 Ark. App. 86, 88, 40 S.W.3d 820, 822 (2001); *see also* Ark. Code Ann. § 11-10-529(c)(1) (Repl. 2002) (stating that the Board's findings are conclusive, absent

of fraud, if supported by evidence). The credibility of witnesses and the weight to be accorded their testimony are matters to be resolved by the Board. *Niece v. Director, Ark. Emp. Sec. Dep't*, 67 Ark. App. 109, 992 S.W.2d 169 (1999).

Arkansas Code Annotated section 11-10-514(a)(1) (Repl.2002) provides that an individual "shall be disqualified for benefits if he is discharged from his last work for misconduct in connection with the work." The employer has the burden of proving misconduct by a preponderance of the evidence. *Grigsby v. Everett*, 8 Ark. App. 188, 649 S.W.2d 404 (1983). Misconduct is defined as: (1) disregard of the employer's interests; (2) violation of the employer's rules; (3) disregard of the standards of behavior which the employer has a right to expect of his employees; (4) disregard of the employee's duties and obligations to the employer. *Nibco, Inc. v. Metcalf*, 1 Ark. App. 114, 613 S.W.2d 612 (1981). There is an element of intent associated with a determination of misconduct on the part of the employee. *Oliver v. Director, Ark. Emp. Sec. Dep't*, 80 Ark. App. 275, 94 S.W.3d 362 (2002). Therefore, mere unsatisfactory conduct, ordinary negligence, or good faith errors in judgment or discretion are not considered misconduct unless they are of such a degree or recurrence as to manifest wrongful intent, evil design, or an intentional disregard of the employer's interests. *Niece v. Director, Ark. Emp. Sec. Dep't*, 67 Ark. App. 109, 992 S.W.2d 169 (1999). Whether an employee's acts are willful or merely the result of unsatisfactory conduct or unintentional failure of performance is a fact question to be decided by the Board. *Id.*

Before the backdrop of our law, I maintain that the Board of Review's decision to deny unemployment benefits based on a finding of appellant's misconduct in connection with the work is not supported by substantial evidence. As we held in *Niece v. Director, supra*, mere unsatisfactory conduct, ordinary negligence, or good faith errors in judgment or discretion are not misconduct sufficient to deny unemployment benefits. Here, appellant applied her long-standing experience as a nurse and decided that no further action had to be taken regarding the patient who had no bowel sounds. She talked to the patient and she was aware of the fact that elderly patients may have temporary lack of bowel sounds. The next nurse checking on the patient found bowel sounds. That same patient was delivered into the hospital for renal failure only later in the afternoon following appellant's early-morning check. Furthermore, even though the employer later testified that appellant's

failure to take further steps was against company policy, it also appears that appellant had never been found in violation of that policy before. In addition, the employer admitted that appellant had been dismissed solely for the failure to follow the "bowel-sound" policy.

As such, we are faced with a one-time error at best and I am at a loss how this should constitute conduct of such a degree or recurrence as to manifest wrongful intent, evil design, or an intentional disregard of the employer's interests. Appellant's error in judgment ostensibly may not have helped the patient in question, particularly in light of the fact that the patient later was indeed delivered to the hospital for renal failure. However, even if that was a mistake, it was one that did not happen repeatedly. Similarly, it does not appear that the mistake was borne of any wrongful intent or evil design or any disregard of the employer's interest. The mistake was based fully on appellant's nursing expertise and what amounts to a misjudged situation. Nothing in the employer's testimony appears to contradict that. The employer could not point to anything that would tend to prove that appellant acted with any intent whatsoever. Therefore, I would reverse and remand for an order to pay unemployment benefits.

I am authorized to state that Judges GLADWIN, BAKER, and ROAF join this dissent.