Brenda K. PACHECO  *v.*  DIRECTOR, Employment Security Department and Community Action Program for Central Arkansas

E 04-357                                                        211 S.W.3d 569

Court of Appeals of Arkansas
Opinion delivered June 29, 2005

*Daniel A. Webb*, for appellant.

*Phyllis Edwards*, for appellee.

SAM BIRD, Judge.  On June 18, 2004, appellee Community Action Program for Central Arkansas (CAPCA) terminated

appellant Brenda Pacheco from her employment. She subsequently applied for unemployment benefits, and her application was denied by the Arkansas Employment Security Department. Pacheco then appealed to the Arkansas Appeal Tribunal, which reversed the decision of the Department and awarded unemployment benefits to her. CAPCA appealed to the Board of Review, and the Board reversed the decision of the Appeal Tribunal. In the present appeal, Pacheco claims that the Board erred in finding that there was substantial evidence that she was discharged for misconduct under Ark. Code Ann. § 11-10-514. We agree with Pacheco, and for the reasons stated herein, we reverse and remand.

Arkansas Code Annotated section 11-10-514(a)(1) (Repl. 2002) states that a person shall be disqualified from receiving unemployment benefits if the Director of the Employment Security Department finds that the person is discharged from his or her last work for misconduct in connection with the work. "Misconduct," for purposes of unemployment compensation, involves: (1) disregard of the employer's interest, (2) violation of the employer's rules, (3) disregard of the standards of behavior which the employer has a right to expect of his employees, and (4) disregard of the employee's duties and obligations to his employer. *Fulgham v. Director*, 52 Ark. App. 197, 918 S.W.2d 186 (1996). To constitute misconduct, the definitions require more than mere inefficiency, unsatisfactory conduct, failure in good performance as the result of inability or incapacity, inadvertencies, ordinary negligence in isolated instances, or good-faith errors in judgment or discretion. *Johnson v. Director*, 84 Ark. App. 349, 141 S.W.3d 1 (2004). Instead, there is an element of intent associated with a determination of misconduct. *Id.* There must be an intentional and deliberate violation, a willful and wanton disregard, or carelessness or negligence of such a degree or recurrence as to manifest wrongful intent or evil design. *Id.* Misconduct contemplates a willful or wanton disregard of an employer's interest as is manifested in the deliberate violation or disregard of those standards of behavior which the employer has a right to expect from its employees. *Id.*

The evidence in this case reveals that on June 11, 2004, Pacheco was called into a meeting with her supervisor, Carolyn Mallot, and CAPCA's human resources representative, Pam Hensley. Pacheco was informed that she was being placed on one week's suspension from her employment, with pay, pending an

investigation into co-workers' complaints. Pacheco was apparently told not to discuss "it" with anyone pending completion of the investigation.

Upon her return on June 18, Pacheco was given a letter signed by CAPCA's Executive Director, Phyllis Fry, and Head Start Director, Bill Ballard, informing her that she was dismissed from her position as Family Advocate for CAPCA Head Start for the following reasons:

Section 1200.00 of the Administrative Manual

#5  Inability to get along with co-workers, so that work is hindered or not up to required standards.

#7  Rudeness in dealing with the public, clients, vendors, or other employees.

#8  Conduct unbecoming of an employee, which adversely reflects upon the agency.

#12  Conduct which undermines the morale of other employees.

#17  Using threatening or abusive language.

#18  Insubordination.

Pacheco pursued a grievance against CAPCA, which was denied. She then filed a claim for unemployment benefits, which has become the subject of this appeal. On July 12, 2004, the Department denied Pacheco's application for unemployment benefits based on its determination that she was discharged from her job because she "willfully" did not perform her work satisfactorily and because her actions were within her control and against CAPCA's best interest. Pacheco then appealed to the Arkansas Appeal Tribunal.

On August 12, 2004, the Appeal Tribunal conducted a hearing by telephone. During the hearing, CAPCA's Head Start Program Director, Bill Ballard, testified that Pacheco worked for CAPCA from February 2000 to June 2004. He said that Pacheco's primary functions were dealing with families, recruiting, and managing children's records, and that the decision to terminate her was based on six items of disciplinary action found in CAPCA's

Administrative Manual. Specifically, he said that "all six items combined led us to make our decision to terminate Mrs. Pacheco's employment with us."

Ballard also said that, prior to Pacheco's termination, she was suspended with pay pending an investigation into certain allegations, including that she was generally rude, that she was "running everybody off," and that she "tried to make [her co-workers] live by her opinion." In addition, Ballard said that Pacheco allegedly "threatened people with their jobs" and that she had, in the past, ignored an order from a center manager to perform a task. Ballard also testified that, at the time Pacheco was suspended, there were "six or eight pages of testimony" from her co-workers to support the allegations against her and that Pacheco "had access to look at these [allegations] and a chance to reply to all of them." However, on cross-examination, Ballard admitted that he did not attend the meeting on June 11, that he did not know why Pacheco was not given a chance to review the file, but that he knew the investigation file was at the meeting if Pacheco had wanted to read it.

Ballard further testified that Pacheco had demonstrated insubordination by discussing the situation with others after CAPCA informed her of the investigation against her, suspended her with pay, and told her "not to discuss it until we completed our investigation." Ballard said that, on the same day that Pacheco was suspended, CAPCA received calls "from outside, from people not even employed with CAPCA that they already knew about all of this, from [Pacheco], or from somebody she talked to."

Carolyn Mallot, CAPCA's Community Development Director, testified that she had supervised Pacheco from February 2004 to June 2004. Mallot said that CAPCA had planned to discuss the allegations with Pacheco after her suspension, but that the discussion never occurred because the center had received phone calls from persons asking questions about the matter.

Pacheco testified that during her employment with CAPCA, she never received any input that things were not going well and that no one warned her that she "was not popular." She said that she did, however, notice "a lot of people resigning from their jobs." She also said that she felt like she was "wrongly done" and that she filed a grievance procedure after being terminated. According to Pacheco, CAPCA responded to her grievance by stating that it had received a phone call after she was suspended, and based on that, the decision to terminate was proper.

Pacheco said that two co-workers contacted her by telephone the day after she was suspended and that she did not initiate the contacts. She said that the first caller called during her lunch break and asked her where she was, and that she replied, "Well, I'm not coming in this week." The caller then asked, "What's wrong?" and Pacheco replied, "I just can't come in." Pacheco said that she responded "no" when questioned by the caller about whether she was fired. Pacheco testified that she started crying during the conversation. According to Pacheco, the second phone call was from co-worker Charla Steiner. Pacheco denied discussing the details of her suspension with Steiner or the first caller, but admitted that she told both callers that she had been suspended.

Pacheco also testified that, on the day she was suspended, she told Mallot, "I don't understand this," and when she asked to further discuss the situation with Mallot, her request was denied. She said that on the day that she returned to work after her suspension, she was terminated. She testified that Ballard and Mallot told her that, based upon their investigation, she was fired. Pacheco stated that she did not "have a clue what they did," but that she was given a letter of termination.

Charla Steiner testified that she resigned from CAPCA "because of what happened to [Pacheco]." She said that she did not know anyone who had quit because of Pacheco, and that she had never known Pacheco to talk to anyone in a rude manner or to have a verbal confrontation with anyone. Steiner also said that she called Pacheco on June 11, 2004, and that Pacheco was "crying" and saying that "she had been suspended and that she did not know why, but they said she was rude to people." She said that Pacheco told her that she was not supposed to have any contact with anyone from work.

The Appeal Tribunal reversed the decision of the Department, concluding that there was not a preponderance of the evidence to support a finding that claimant willfully and intentionally failed to perform her job against the employer's interest, and that she was discharged from her last work for reasons which do not constitute misconduct in connection with the work. CAPCA then appealed to the Board of Review.

The Board of Review reversed the decision of the Appeal Tribunal, stating as follows:

> Based on the evidence, the Board of Review finds that the claimant was discharged from last work for misconduct not con-

nected with the work. The available evidence does not establish that the claimant's conduct, in regard to the original complaints, rose to the level of misconduct. She may have exceeded her authority to some extent by attempting to correct problems with other co-workers rather than report the problems to the appropriate super-visor for correction. It has not been shown that the claimant was acting against the employer's interests, nor that she was advised to stop attempting to correct her coworkers.

However, the claimant's conduct after her suspension was more serious, and this was the reason the employer discharged her without conducting any further investigation of the complaints. The claim-ant was told not to discuss *the matter* with any coworkers. The testimony of the claimant's witness was the most damaging evidence against the claimant. The claimant may not have initiated the phone calls to her coworker, but she told her coworkers that she had been suspended, that the reason for the suspension was allegations of rudeness, and that her suspension would last a week. The claimant knew that she was not supposed to discuss *the matter* with her coworkers, and even told them she was not supposed to discuss it when she, in fact, discussed it with them. . . . ? If the claimant had simply told the coworkers that she had been instructed not to discuss her absence, her conduct would probably not rise to a level to constitute misconduct, and the outcome of this case might be different. However, the claimant disclosed information to the call-ers after she was specifically told not to discuss the matter with her coworkers. Her conduct violated a standard of behavior the em-ployer had a reasonable right to expect. Therefore, the decision of the Appeal Tribunal (Appeal No. 2004–AT–07484), which reversed the Department determination, is reversed on the finding that the claimant was discharged from last work for misconduct connected with the work.

(Emphasis added.)

Whether an employee's actions constitute misconduct in connection with the work sufficient to deny unemployment benefits is a question of fact for the Board. *Thomas v. Director*, 55 Ark. App. 101, 931 S.W.2d 146 (1996). Our standard of review of the Board's findings of fact is well-settled:

We do not conduct a *de novo* review in appeals from the Board of Review. In appeals of unemployment compensation cases we instead review the evidence and all reasonable inferences deducible

therefrom in the light most favorable to the Board of Review's findings. The findings of fact made by the Board of Review are conclusive if supported by substantial evidence; even when there is evidence upon which the Board might have reached a different decision, the scope of judicial review is limited to a determination of whether the Board could have reasonably reached its decision based on the evidence before it. Substantial evidence is such evidence as a reasonable mind might accept as adequate to support a conclusion.

*Johnson v. Director, supra* (citing *Snyder v. Director,* 81 Ark. App. 262, 263, 101 S.W.3d 270, 271 (2003)). Additionally, the credibility of witnesses and the weight to be accorded their testimony are matters to be resolved by the Board of Review. *Johnson, supra.*

■ Here, there is no evidence that Pacheco manifested the requisite intent to constitute misconduct under Ark. Code Ann. § 11-10-514. The Board of Review found that Pacheco disclosed information about her suspension over the phone after she was specifically told not to discuss the matter with her coworkers, and that her conduct violated a standard of behavior the employer had a reasonable right to expect. Our difficulty with the Board's conclusion, however, is that we are unable to find any evidence in the testimony of CAPCA's witnesses, or anywhere else in the record, that enables us to determine what "the matter" was that Pacheco was not supposed to discuss.

The evidence shows that CAPCA instructed Pacheco not to discuss "it" with anyone pending investigation of the allegations against her. Although CAPCA had planned to discuss these allegations with Pacheco after her suspension, Carolyn Mallot testified that this discussion never occurred. Furthermore, Pacheco testified that, on the day she was suspended, she told Mallot, "I don't understand this," and when she asked to further discuss the situation with Mallot, her request was denied.

After Pacheco was suspended, two co-workers called to inquire why she was not at work. Pacheco clearly did not initiate this contact, and she was emotional and crying when she informed the callers that she had been suspended. Other than telling Charla Steiner that she had been accused of being rude, there is no evidence that Pacheco discussed anything with her about an investigation that was about to be undertaken by CAPCA. If, as the Board suggests, Pacheco should have responded to inquiries by saying that she "was not supposed to discuss her absence," then

that is what CAPCA should have instructed her to do. An admonition not to discuss "it" is not sufficiently specific to put Pacheco on notice of what "it" was that she was not to discuss.

In our view, a reasonable mind could not accept this evidence as adequate to support the conclusion that Pacheco's actions constituted an intentional and deliberate violation of her employer's expectations. We therefore hold that the Board's decision was not supported by substantial evidence, and we reverse and remand the case to the Board for further proceedings to determine the amount and duration of Pacheco's benefits.

Reversed and remanded.

HART and CRABTREE, JJ., agree.