SLIP OPINION

# ARKANSAS COURT OF APPEALS

DIVISION III
No. E-13-971

| | |
|---|---|
| ALLYSON THEOPHILE<br><div align="right">APPELLANT</div> | **OPINION DELIVERED** SEPTEMBER 17, 2014 |
| V. | |
| DIRECTOR, DEPARTMENT OF WORKFORCE SERVICES, and ADMINISTRATIVE OFFICE OF THE U.S. COURT<br><div align="right">APPELLEES</div> | APPEAL FROM THE ARKANSAS BOARD OF REVIEW<br>[NO. 2013-BR-02302]<br><br>AFFIRMED |

**ROBERT J. GLADWIN, Chief Judge**

The Arkansas Board of Review (Board) affirmed the denial of benefits to Allyson Theophile, ruling that she did not voluntarily resign from her employment, but that she was discharged for misconduct, making her ineligible for unemployment-compensation benefits. Theophile argues on appeal that the Board's decision is not supported by substantial evidence. We affirm.

## I. *Statement of Facts*

Theophile was employed by the Administrative Office of the U.S. Courts in Probation and Pretrial Services in the Eastern District of Arkansas when she submitted her resignation in lieu of termination, effective March 25, 2013. Thereafter, Theophile applied for unemployment compensation benefits. Appellee Arkansas Department of Workforce

SLIP OPINION

Services determined that Theophile was disqualified from receiving benefits because she had voluntarily resigned.

At the telephonic hearing before the Arkansas Appeal Tribunal on June 26, 2013, the hearing officer noted that the issue before the tribunal was whether Theophile voluntarily left, was discharged, or was suspended from last work and whether the circumstances of the separation entitled her to benefits in accordance with Arkansas Code Annotated section 11-10-513 (Repl. 2012) or section 11-10-514 (Supp. 2013).

Theophile testified that she began her work for the U.S. Probation and Pretrial Services Offices in Los Angeles, working in the Central District of California for fifteen years. She moved to Little Rock on June 4, 2012, because she was promoted to Assistant Deputy Chief U.S. Probation Officer.

The record reflects that Theophile received a "Notice of Proposed Adverse Action" from Rebecca Howell, Deputy Chief Probation Officer for the Eastern District of Arkansas, on December 19, 2012. The notice stated that in June, July, and November 2012, Theophile withdrew money on her government-issued travel card for personal expenses, violating statute, policies, and the Code of Conduct for Judiciary Employees. The notice stated that Theophile converted public funds for personal use, knowing that it was improper and a misuse of the government-issued credit card. The notice proposed to Theophile that the following actions be taken:

> 1) written reprimand; 2) withhold next wage increase . . . ; 3) extend probationary period until December 31, 2013; 4) suspended without pay for five days; and 5) pay your government credit card in full as current balance is $236.05.

SLIP OPINION

The notice provided that these proposed actions would take place if Theophile did not submit a request for administrative review within five days. Theophile filed a request for review on December 19, 2012.

The record further reflects that Theophile filed a declaration in opposition to the proposed adverse action stating that she did not intentionally violate any statute, policies, or Code of Conduct for Judiciary Employees when she used her government-issued travel card for moving expenses. She claimed that when she used the card, she did not recognize her actions as being improper. She claimed that she understood, based on Rebecca Howell's assertion during a telephone conversation with Theophile that Howell had been given the option to use her government credit card to pay for moving expenses and that it was acceptable to use the government card for work-related moving and relocation expenses. She also explained that she thought it was permissible to use the credit card for moving and relocation because the credit card was issued in Theophile's name and she paid the charges directly. She stated that she now understood that it was wrong, that she was responsible for her actions, and that she regretted her poor judgment. However, she claimed that the proposed adverse action was too severe, taking into account her years of federal service and excellence in the past. In response to the charges, she noted that the promised relocation bonus of $25,000 was to be received two weeks after her arrival on June 4, 2012, but was not received until July 6, 2012. She stated that she only received $18,000 due to taxes.

In response to Theophile's declaration, Howell filed a memorandum on January 14, 2013, and recommended termination. Theophile sent a memorandum to Eddie Towe,

3

Chief U.S. Probation Officer, proposing a meeting to discuss alternatives to the recommended termination. Towe responded on January 28, 2013, and proposed that Theophile voluntarily submit her resignation effective March 25, 2013, in exchange for a neutral employment reference and no reference to this matter or the proposed disciplinary actions in her personnel file.

An agreement was signed by Theophile and Towe effectuating Towe's proposal to allow Theophile to resign. However, at the hearing before the tribunal, Theophile stated that she did not voluntarily quit her employment but agreed to the resignation only because she did not want the termination in her permanent record.

The Appeal Tribunal found that

> [Theophile] voluntarily agreed to enter into an agreement with her employer that she would resign effective March 25, 2013. [Theophile] had legal representation throughout the proceedings and was free to consult with her attorney on available options. [Theophile] did not quit for a reason attributable to the employer. Therefore, [Theophile] voluntarily left last work without good cause connected with the work. [Ark. Code Ann. § 11–10–513(a).]

Theophile appealed to the Board, which affirmed the denial of benefits, but modified the determination by finding that Theophile was discharged from her employment for misconduct in connection with her work. Ark. Code Ann. § 11–10–514(a). The Board found as follows:

> In the present case, the documentary evidence [Theophile] submitted to the Appeal Tribunal shows that the employer discovered that [Theophile] was using her government issued travel credit card for personal use. [Theophile] admitted that she used the card for moving expenses when she took a promotion to the Little Rock office. [Theophile] had been living and working for the employer in California. The documentary evidence indicates that [Theophile] also admitted that she knew she was not allowed to use the government issued travel credit card for such a purpose.

4

SLIP OPINION

. . . Therefore, the decision of the Appeal Tribunal . . . which affirmed the Department of Workforce Services' determination, is modified to deny benefits under Ark. Code Ann. § 11-10-514(a) on the finding that [Theophile] was discharged from last work for misconduct with the work.

Theophile filed a timely petition for review, and this appeal followed.

## II.  *Standard of Review*

On appeal, the Board's findings of fact are reviewed in the light most favorable to the prevailing party, and the Board's decision is reversed only when the findings are not supported by substantial evidence. *Occhuzzo v. Dir.*, 2012 Ark. App. 117. Substantial evidence is such relevant evidence that a reasonable mind might accept as adequate to support a conclusion. *Smith v. Dir.*, 2013 Ark. App. 360. Even where there is evidence from which the Board might have reached a different conclusion, our scope of judicial review is limited to a determination of whether the Board could have reasonably reached its decision based on the evidence before it. *Booker v. Dir.*, 2013 Ark. App. 99. The credibility of witnesses and the weight to be accorded their testimony are matters to be resolved by the Board. *Occhuzzo*, *supra*.

## III.  *Sufficiency of Evidence to Support Denial of Benefits for Misconduct*

A person will be disqualified for unemployment benefits if it is found that he was discharged from his employment on the basis of misconduct in connection with the work. Ark. Code Ann. § 11-10-514(a)(1) (Repl. 2013). For purposes of unemployment compensation, "misconduct" involves (1) disregard for the employer's interest; (2) violation of the employer's rules; (3) disregard of the standards of behavior that the employer has a right to expect of his employees; and (4) disregard of the employee's duties and obligations

to his employer. *Booker, supra.* Misconduct requires more than mere inefficiency, unsatisfactory conduct, failure in good performance as the result of inability or incapacity, inadvertencies, ordinary negligence in isolated instances, or good-faith errors in judgment or discretion—there must be an intentional or deliberate violation, a willful or wanton disregard, or carelessness or negligence of such degree or recurrence as to manifest wrongful intent or evil design. *Occhuzzo, supra.* Whether an employee's actions constitute misconduct in connection with the work sufficient to deny unemployment benefits is a question of fact for the Board. *Johnson v. Dir.*, 84 Ark. App. 349, 141 S.W.3d 1 (2004).

## IV. *Discussion*

Theophile claims that the Board's decision is erroneous and not supported by substantial evidence. She cites her stellar performance throughout her career with the U.S. Probation and Pretrial Services Office in California, pointing to her outstanding performance evaluations in years past. She argues that these facts do not support the conclusion that someone of her stature would ever intentionally violate or disregard her employer's policies or interests.

She contends that there was no evidence presented to the Board that she intentionally violated her employer's policy by using her government- issued credit card. The Board found that she knew she was not allowed to use the credit card for moving expenses. However, she claims that the only evidence to support that she knew it was wrong came from Rebecca Howell's response to Theophile's declaration and revised recommendation for disciplinary action, dated January 14, 2013. Howell relies on an alleged written statement

from Theophile, purportedly dated December 11, 2013, to suggest that Theophile acknowledged that she knew her actions were improper. Theophile points out that this December 11, 2013 statement was not in the record and is thus not before this court. Therefore, Theophile argues that the Board's reliance on this alleged statement is erroneous and there is nothing else in the record before the Board to support that Theophile was aware that her use of the government credit card was improper.

She further claims that her consistent testimony has been that her relocation bonus was delayed and that she did not receive the full amount that she anticipated due to taxes. She spoke to Howell and understood that she indicated that Theophile was allowed to use her government credit card for relocation, even though she knew it would be improper to use the credit card for personal expenses. This misunderstanding proves, she contends, that she did not intentionally disregard or violate her employer's rules regarding use of the credit card and thus, she was not discharged for misconduct sufficient to deny unemployment benefits. Theophile maintains that there was no evidence before the Appeal Tribunal or the Board regarding the employer's policies concerning government-issued credit cards. She complains that the accusation that she violated judicial canons of the Code of Conduct for Judiciary Employees is vague. She points out that she has had the same credit card for fifteen years, that she pays it directly, and that she never expected the government to pay for her charges on the card. Further, she notes that she was not subjected to termination until she retained an attorney and chose to seek administrative review of the initial disciplinary recommendation. She contends that she has taken responsibility for her actions, not denying

that what she did was improper, but denying that she willfully, intentionally, or even recklessly violated her employer's policies. She claims that this was one occasion when she made a good-faith error in judgment and does not deserve to be denied unemployment.

Appellee argues that the Board's decision that Theophile was discharged for misconduct due to misuse of her government-issued credit card must be affirmed because it is supported by substantial evidence. Appellee points to Theophile's fifteen-year employment with the Administrative Office of the U.S. Courts. After she accepted a promotion, a relocation bonus was offered. She began her position in Little Rock on June 4, 2012. She received her relocation bonus of approximately $18,000 on July 6, 2012. A routine audit was conducted that showed Theophile had made cash withdrawals on her government-issued credit card on June 29, and July 6, 2012, that were not related to government travel. When contacted, Theophile informed the auditor that these withdrawals were not related to travel but were used to pay for moving expenses related to her relocation. In January 2013, it was found that additional cash advances had been taken on the card in November 2012. When the auditor tried to question Theophile, she was not cooperative. She admitted that the expenses in November were not directly, but indirectly, related to relocation as she was in debt because of the relocation.

Based on her conflicting statements, the employer determined that there were additional violations that warranted more discipline. She was then allowed to resign from her employment in lieu of being discharged. A resignation that is induced under pressure from the employer is not considered voluntary and is treated as a discharge for the purposes

of unemployment insurance. *See Dobbins v. Everett*, 2 Ark. App. 254, 620 S.W.2d 309 (1981).

Appellee points out that Theophile admitted that she knew that the government-issued credit card was not to be used for personal expenses, but did so after her supervisor, Howell, indicated that she could use it for relocation. However, Howell denied that she ever indicated to Theophile that it was acceptable to use the card for that purpose. Further, appellee points to Theophile's use of the card only after her job had begun in Arkansas. It is within the Board's purview to determine witness credibility. *Occhuzzo, supra.* Accordingly, we hold that substantial evidence supports the Board's decision.

Affirmed.

WOOD and BROWN, JJ., agree.

*Flinn Law Firm, P.A.*, by: *Jennifer Williams Flinn*, for appellant.

*Phyllis A. Edwards*, for appellee.