Cite as 2024 Ark. App. 76

# ARKANSAS COURT OF APPEALS

DIVISION IV
No. E-22-694

| | |
|---|---|
| | **Opinion Delivered** February 7, 2024 |
| CHERYL PILLOW | |
| APPELLANT | APPEAL FROM THE ARKANSAS BOARD OF REVIEW |
| | [NO. 2022-BR-01683] |
| V. | |
| DIRECTOR, DEPARTMENT OF WORKFORCE SERVICES | |
| APPELLEE | AFFIRMED |

## BRANDON J. HARRISON, Chief Judge

Cheryl Pillow appeals the Board of Review's order finding that she is a covered individual within the meaning of section 2102(a)(3) of the CARES Act and therefore eligible for Pandemic Unemployment Assistance (PUA), but only for the time period of 15 March 2020 to 4 April 2020.[1] On appeal, she argues that the Board lacked substantial evidence to conclude that her eligibility ended in April 2020 because she remained unavailable for work due to COVID-19. We affirm the Board's decision.

On 27 January 2020, Pillow began temporary employment as a front-office clerk at an oral surgeon's office. Her employment was scheduled to end the first week of April

---

[1]PUA is one of several federal financial-assistance programs created by the federal government during the COVID-19 pandemic. *See* Coronavirus Aid, Relief, and Economic Security (CARES) Act, Pub. L. No. 116-136, 134 Stat. 281 (2020) (codified at 15 U.S.C. § 9021 to § 9034).

2020; however, on March 17, the doctor informed his employees that hours would be reduced due to the COVID-19 public health emergency, and Pillow was given the option to quit or continue working reduced hours. She chose to quit due to concerns about exposing her immune-suppressed husband to COVID-19.

Pillow applied for PUA on 16 July 2020 but was denied on 28 August 2020; the "Notice of Determination of Entitlement" stated that she was not a covered individual within the meaning of section 2102(a)(3) of the CARES Act. On 16 June 2021,[2] Pillow appealed this decision, and the Appeal Tribunal conducted a hearing on 30 June 2022. Pillow testified that the main reason she left her employment on 17 March 2020 was her husband's health condition. She said that her employer had spoken to her about a full-time position, but no plan had been put in place before she left. She also said that she had previously worked in similar front-desk positions and would have sought other positions after this temporary employment ended if not for continuing COVID concerns.

Her husband, Darryl Pillow, testified that he had been diagnosed with Guillain-Barre syndrome approximately eighteen years ago and had reduced lung function and other nerve damage as a result of that condition. He stated that he is more susceptible to respiratory illness and is also a Type 2 diabetic. When the COVID pandemic began, he was advised by his doctor to exercise extreme caution and limit exposure as much as possible. He and his family sheltered in place until May or June 2021.

---

[2]The Arkansas Appeal Tribunal found that Pillow's untimely filing of her appeal was a result of circumstances beyond her control. Pillow had been advised by the Department of Workforce Services (DWS) to proceed with her claim for regular unemployment before further pursuing PUA.

At the conclusion of testimony, Pillow's counsel asserted that DWS had never considered Pillow's underlying eligibility for PUA because it had determined (erroneously) that she was eligible for regular unemployment. Counsel argued that Pillow was eligible for PUA under three different subsections of section 2102(a)(3): (1) the individual is unable to reach the place of employment because the individual has been advised by healthcare provider to self-quarantine due to concerns related to COVID-19, (2) the individual has to quit his or her job as a direct result of COVID-19, and (3) the individual's place of employment is closed as a direct result of the COVID-19 public health emergency. *See* CARES Act, Pub. L. No. 116-136, § 2102(a)(3)(A)(ii)(I)(ff), (ii) & (jj).

In its decision, the Appeal Tribunal acknowledged that Pillow had testified that she quit her job because of her husband's preexisting health issues, for which her husband, and by extension other members of his household, were advised by his doctor to quarantine. However, the Appeal Tribunal also found that Pillow's employment was temporary and scheduled to last only until the first week of April 2020. Therefore, it reasoned, Pillow was a covered individual within the meaning of the CARES Act only for the period in which she would have otherwise been employed but for COVID-19—specifically, the time period of 15 March 2020 to 4 April 2020.

Pillow appealed to the Board of Review and stressed that the Appeal Tribunal's decision was erroneous because the order to quarantine from Mr. Pillow's doctor "prevented Ms. Pillow from extending her employment into a permanent position or seeking otherwise suitable work after her employment ended in April 2020." In other words, Pillow remained unavailable for work due to COVID-19 even after her temporary

3

employment was scheduled to end.

In its decision affirming the Appeal Tribunal, the Board explained,

> The claimant argues that there was the possibility of her job going from temporary to permanent. However, there was no evidence that this was a set agreement. Instead, she was told that hours were going to be reduced due to the COVID-19 public health emergency so she would have only been working reduced hours until the first week of April 2020. The Board finds the claimant's testimony that she was going to have a permanent job to be speculative in nature. She does not provide any testimony about substantive terms of permanent employment. If the employer had provided testimony or documentation that it was their intent to hire her permanently after the first week of April, that could have changed the finding. To be eligible for PUA a claimant must be unemployed for a qualifying reason connected to the COVID-19 public health emergency. The claimant was facing unemployment at the end of her temporary period because the temporary job was completed, not because of the COVID-19 public health emergency. Therefore, given the facts in this ease, she is not eligible for PUA after that time period.

> The problem is the claimant is trying to use two opposite ideas to be a covered individual. The claimant argues she cannot work due to the COVID-19 public health emergency because of her husband's health status. She had been told by her husband's doctor to self-quarantine. That was the reason she chose to go ahead and quit the temporary job. She cannot at the same time argue she had a permanent job that she would have continued to work if she was going to have to quit due to her need to quarantine. To be a covered individual the claimant must be unemployed due to the COVID-19 public health emergency. The Board finds that she was not unemployed after April 4, 2020 due to the COVID-19 public health emergency, but because the agreed upon term of her temporary position expired.

> It is clear the claimant was temporarily unemployed from March 17, 2020 to April 4, 2020 due to her hours being reduced and asked if willing to resign from her temporary position due to the COVID-19 public health emergency. She is a covered individual for that time period. However, she would have been unemployed after April 4, 2020 because it was just a temporary position and even though there had been talk of making her position permanent it had not occurred. Therefore, the Appeal Tribunal decision No. 2022-AT-03306 is affirmed upon finding the claimant is a covered individual under § 2102(a)(3) of P.L. 116-136 for the time period of March 17, 2020 to April 4, 2020.

4

Pillow has timely appealed the Board's decision.

We review the Board's findings in the light most favorable to the prevailing party and affirm the Board's decision if it is supported by substantial evidence. *McPherson v. Dir.*, 2022 Ark. App. 36, 640 S.W.3d 653. Substantial evidence is such relevant evidence that reasonable minds might accept as adequate to support a conclusion. *Id.* In appeals of unemployment-compensation cases, we view the evidence and all reasonable inferences deducible therefrom in the light most favorable to the Board's findings. *Id.* Even if there is evidence that could support a different decision, our review is limited to whether the Board could have reasonably reached its decision as a result of the evidence presented. *Id.*

The correct application and interpretation of an Arkansas statute, however, is a question of law, which this court decides de novo. *Martin v. Dir.*, 2021 Ark. App. 66; *see also Myers v. Yamato Kogyo Co., Ltd.*, 2020 Ark. 135, 597 S.W.3d 613 (clarifying that agency interpretations of statutes are reviewed de novo). In considering the meaning and effect of a statute, we construe it just as it reads, giving the words their ordinary and usually accepted meaning in common language. *Myers*, *supra*. When the language of a statute is plain and unambiguous and conveys a clear and definite meaning, there is no need to resort to rules of statutory construction. *Martin*, *supra*.

When Pillow applied for PUA, a "covered individual" was defined as an individual who

> (i) is not eligible for regular compensation or extended benefits under State or Federal law or pandemic emergency unemployment compensation under section 9025 of this title, including an individual who has exhausted all rights to regular unemployment or extended benefits under State or Federal law or pandemic emergency unemployment compensation under section 9025 of this title; and

5

(ii) provides self-certification that the individual—

(I) is otherwise able to work and available for work within the meaning of applicable State law, except the individual is unemployed, partially unemployed, or unable or unavailable to work because—

(aa) the individual has been diagnosed with COVID-19 or is experiencing symptoms of COVID-19 and seeking a medical diagnosis;

(bb) a member of the individual's household has been diagnosed with COVID-19;

(cc) the individual is providing care for a family member or a member of the individual's household who has been diagnosed with COVID-19;

(dd) a child or other person in the household for which the individual has primary caregiving responsibility is unable to attend school or another facility that is closed as a direct result of the COVID-19 public health emergency and such school or facility care is required for the individual to work;

(ee) the individual is unable to reach the place of employment because of a quarantine imposed as a direct result of the COVID-19 public health emergency;

(ff) the individual is unable to reach the place of employment because the individual has been advised by a health care provider to self-quarantine due to concerns related to COVID-19;

(gg) the individual was scheduled to commence employment and does not have a job or is unable to reach the job as a direct result of the COVID-19 public health emergency;

(hh) the individual has become the breadwinner or major support for a household because the head of the household has died as a direct result of COVID-19;

(ii) the individual has to quit his or her job as a direct result of COVID-19;

(jj) the individual's place of employment is closed as a direct result of the COVID-19 public health emergency; or

(kk) the individual meets any additional criteria established by the Secretary for unemployment assistance under this section.

15 U.S.C.A. § 9021(a)(3)(A).[3]

Pillow argues that the only issue is whether she met the condition of subsection (ii); in other words, whether she self-certified that she was otherwise able to work and available for work within the meaning of applicable state law, except that she was unemployed, partially unemployed, or unable or unavailable to work because of one of the COVID-19-related reasons listed. She asserts that the Board agreed that she qualified for PUA based on her husband's doctor's instructions, but the Board erred in not finding that she continued to qualify through 2020 and 2021 because she was not cleared to return to work until May or June 2021.

Pillow elaborates that when she originally applied for PUA in the summer of 2020, she needed only to self-certify her general eligibility for PUA, not her eligibility for specific weeks. She asserts that after determining her general eligibility for PUA, DWS was required to provide her an opportunity to file weekly certifications for PUA benefits. While acknowledging that there is no indication that she was denied PUA based on her failure to submit weekly self-certifications, she nevertheless contends that she sufficiently established her general eligibility for PUA and that DWS erred by denying her specific weeks without providing her an opportunity to self-certify her eligibility on a week-by-week basis. She

_____

[3]Congress later added a third requirement requiring documentation to substantiate employment or self-employment or the planned commencement of employment or self-employment.

7

argues that DWS's hold on her PUA account prevented her from filing weekly recertification claims through which she could self-certify her continued eligibility for PUA.

Finally, Pillow asserts that the Board based its conclusion on an incorrect interpretation of the CARES Act, specifically requiring her to show that her sole reason for *continued* unemployment after her temporary job was related to COVID-19. In other words, she argues, the Board's interpretation of the Act required her to show that she would have otherwise secured employment after April 2020 but for COVID-19. She contends, however, that she could, and did, establish her eligibility for PUA benefits based instead on her continued *inability* or *unavailability* for work due to COVID-19. Pillow avers that she became unable or unavailable for work in March 2020 when her husband's doctor advised him and anyone living with him to shelter in place. She remained unable or unavailable for work until around May or June 2021, when Mr. Pillow's doctor deemed it safe to end the family's quarantine.

In response, DWS frames the issue as follows: "Appellant essentially argues that she was a covered individual for a short period of time and that she should continue to be allowed benefits based on those circumstances even if such circumstances no longer exist." DWS does not dispute that Pillow left her temporary employment before its scheduled end date due to a COVID-related reason, and she was correctly awarded PUA benefits for the period between when she left her temporary job and when the job was scheduled to end. However, DWS argues, Pillow's eligibility no longer existed after her temporary employment ended because she could not and did not self-certify an attachment to the workforce beyond her temporary job. The supposition that she might have gotten a job is

8

not sufficient evidence of continuing eligibility.

DWS explains that when looking at the CARES Act, it is clear that a claimant must have been currently in the workforce and unable to work because of COVID. The underlying element is that a person is separated *from a job* due to COVID. Here, Pillow offered no evidence to establish that she was connected to the workforce beyond her temporary employment; thus, that basic eligibility prong was not met after 4 April 2020. DWS claims that Pillow would have been denied PUA for the weeks subsequent to her temporary employment until she could establish a connection to the workplace.

The primary question to be answered in this case is whether Pillow's entitlement to PUA extended beyond the end date of her temporary employment.[4] And the parties appear to agree that the answer to this question lies in the application of section 2102(a)(3)(A)(ii) of the CARES Act. Pillow focuses on the "unable or unavailable to work" language of subsection (a)(3)(A)(ii)(I), which describes a covered individual as "otherwise able to work and available for work within the meaning of applicable State law, except the individual is unemployed, partially unemployed, or unable or unavailable to work" due to one of the COVID-related reasons listed.

The Board, on the other hand, focuses on the COVID-related reasons cited by Pillow: unable to reach the place of employment because the individual has been advised by a health care provider to self-quarantine (subsection (ff)), the individual has to quit his or

---

[4]Pillow raises several other points, including the weekly certification argument described above and the propriety of a fraud investigation, but these arguments were not made below, and this court does not consider issues raised for the first time on appeal. *Rossini v. Dir.*, 81 Ark. App. 286, 101 S.W.3d 266 (2003).

her job as a direct result of COVID-19 (subsection (ii)), or the individual's place of employment is closed as a direct result of COVID-19 (subsection (jj)). The Board reasons that after Pillow's temporary employment concluded, none of these subsections applied, because Pillow no longer had employment that she could not reach (ff), a job she had to quit (ii), or employment that was closed (jj). In other words, she was not "unable or unavailable to work" due to any of these reasons.

We hold that it is not enough for Pillow to testify that she remained unable or unavailable to work due to concerns about COVID-19. Under the plain language of the statute, a claimant's status as "unemployed, partially unemployed, or unable or unavailable to work" must be due to one of the COVID-19-related reasons listed in the statute. We agree with the Board's reasoning that after Pillow's temporary employment concluded, the subsections she relies on no longer applied. We hold that the Board could have reasonably reached its decision as a result of the evidence presented, and we therefore hold that the Board's decision is supported by substantial evidence and affirm.

Affirmed.

ABRAMSON and HIXSON, JJ., agree.

*Jaden Atkins*, Legal Aid of Arkansas, for appellant.

*Cynthia L. Uhrynowycz*, Associate General Counsel, for appellee.