Norman OLSON *v.* William F. EVERETT, Director
of Labor, and THE GENTLEMEN'S SHOP

E 82-300                                     650 S.W.2d 247

Court of Appeals of Arkansas
Opinion delivered May 18, 1983

*D. Michael Hancock,* Ozark Legal Services, for appellant.

*Thelma Lorenzo,* for appellees.

TOM GLAZE, Judge. In this Employment Security Division case, the Board denied the claimant benefits under Ark. Stat. Ann. § 81-1106 (b) (Repl. 1976) for being discharged from his job on account of dishonesty. On appeal,

claimant argues his actions leading to the discharge were not sufficient for finding misconduct. We agree.

Our Court in *Stagecoach Motel* v. *Krause*, 267 Ark. 1093, 593 S.W.2d 495 (Ark. App. 1980), defined misconduct as follows:

> . . . An act of wanton or wilful disregard of the employer's interest, a deliberate violation of the employer's rules, a disregard of the standard of behavior which the employer has a right to expect of his employees.

In deciding whether or not the acts of the employee are wilful and wanton, we also have said that such is a question of fact for the Board of Review to determine. *Arlington Hotel* v. *Employment Security Division*, 3 Ark. App. 281, 625 S.W.2d 551 (1981). The misconduct found in the instant case was one of dishonesty which is defined as a disposition to lie, cheat or defraud; untrustworthiness; lack of integrity. *Black's Law Dictionary* 421 (5th ed. 1979). To determine whether claimant acted dishonestly, we review the evidence that was before the Board.

The record reflects that the employer hired claimant as an assistant manager. Claimant is epileptic, but had not experienced a seizure for ten years prior to this employment. The evidence is in conflict regarding whether the employer was told by the claimant of his epilepsy. About eight months after he was employed, claimant suffered a seizure at home which required hospitalization. Emotionally distraught over the event, claimant's wife contacted the employer the next day, telling him the claimant had the flu and was hospitalized for tests. Two days later, she told the employer that her husband actually had suffered an epileptic seizure and later advised the employer that upon the doctor's suggestion, they planned to take a family trip to Nebraska. After spending about one week in Nebraska, claimant returned to Arkansas, at which time he was discharged by his employer.

The employer testified that he fired the claimant because he failed to reveal that he was an epileptic at the time

of hire. In sum, the employer related that claimant was not truthful and could not be trusted. The employer further testified that the claimant did not provide the epilepsy information on the resume that he submitted prior to his employment. In this connection, the employer did not furnish a job application, but claimant furnished his own form.[1] Apparently, this form did not contain a question regarding epilepsy or seizures but rather requested only the following: "Physical record: List any physical defects. OK."

Both the employer and claimant cite cases regarding the falsification of a job application form, but we find them inapposite to the issue presented here. *See Casias* v. *Industrial Commission*, 38 Colo. App. 261, 554 P.2d 1357 (1976); and *Miller Brewing Co.* v. *Department of Industry, Labor and Human Relations*, 308 N.W.2d 922 (Wis. Ct. App. 1981); *see also Woodhams* v. *Ore-Ida Foods, Inc.*, 101 Idaho 369, 613 P.2d 380 (1980). In *Woodhams* and *Casias*, the employers furnished claimants job applications that specifically requested whether the applicant had "epilepsy or fits" or had ever had "epileptic attacks, dizziness or fainting spells." In each case, the claimant falsely marked the application in the negative. Again, in *Miller Brewing*, the claimant falsely answered a job application which specifically requested whether he had been convicted of a crime other than a traffic violation. Here, unlike *Woodhams, Casias* and *Miller Brewing*, the employer furnished no application nor did he ask claimant whether he suffered from epilepsy, seizures or related symptoms. The form submitted by the claimant provided no questions or information regarding epilepsy or seizures, but as previously mentioned, it merely noted to list any physical defects — to which the claimant answered, "OK." Certainly, the claimant was (and had been for ten years) all right and free from any seizure episodes due to epilepsy at the time he was hired.

On the facts before us, we find no evidence to support the Board's finding of dishonesty. Although there was conflicting evidence on the question, there was evidence from which the Board could (and did) conclude that the

---

[1]This form was never made a part of the record before the Board or Appeal Tribunal.

claimant failed to reveal he was an epileptic. Even so, the employer testified that if he had known this fact, he still would have hired the claimant. Thus, the issue to be decided was not whether claimant was an epileptic, but instead, whether his failure to reveal this problem was a dishonest act under Ark. Stat. Ann. § 81-1106 (b) (2). We find no substantial evidence indicating that the claimant lied to, cheated or defrauded the employer or was otherwise dishonest.

Reversed and remanded.

MAYFIELD, C.J., dissents.

MELVIN MAYFIELD, Chief Judge, dissenting. The opinion of the majority states "there was evidence from which the Board could (and did) conclude that the claimant failed to reveal that he was an epileptic," and the opinion defines the issue to be decided as whether that failure constituted a "dishonest act." Since there was evidence that the claimant was hired as an assistant manager and that he handled money and made out reports when the manager was gone, it seems reasonable to expect that he should be honest and trustworthy in every respect. Thus, I think the issue of whether the claimant's failure to list epilepsy as a physical defect constituted a dishonest act was for the Board of Review — not us — to determine.

In *Harris* v. *Daniels*, 263 Ark. 897, 901, 567 S.W.2d 954 (1978), the Arkansas Supreme Court said:

Even though there is evidence upon which the Board of Review might have reached a different result, the scope of judicial review is limited to a determination whether the board could reasonably reach its results upon the evidence before it and a reviewing court is not privileged to substitute its findings for those of the board even though the court might reach a different conclusion if it had made the original determination upon the same evidence considered by the board. (Citations omitted.)

I would affirm.