Danny K. SNYDER *v.* DIRECTOR,
Employment Security Department, and Eaton Aeroquip, Inc.

E 02-254                                              101 S.W.3d 270

Court of Appeals of Arkansas
Divisions I, III, and IV
Opinion delivered March 19, 2003

*Appellant*, pro se.

*Phyllis A Edwards*, for appellee Director.

S AM BIRD, Judge. The appellant, Danny K. Snyder, was discharged from his employment with Eaton Aeroquip, Inc., and filed a claim for unemployment benefits. The Board of Review denied benefits upon finding that Snyder was discharged for misconduct in connection with the work, and Snyder appeals. He contends that the Board erred in finding that he was discharged for misconduct in connection with the work. We find no error and we affirm.

We do not conduct a *de novo* review in appeals from the Board of Review. *Brooks v. Director*, 62 Ark. App. 85, 966 S.W.2d 941 (1998). In appeals of unemployment compensation cases we instead review the evidence and all reasonable inferences deducible therefrom in the light most favorable to the Board of Review's findings. *Id.* The findings of fact made by the Board of Review are conclusive if supported by substantial evidence; even when there is evidence upon which the Board might have reached a different decision, the scope of judicial review is limited to a determination of whether the Board could have reasonably reached its decision based upon the evidence before it. *Bennett v. Director*, 73 Ark. App. 281, 42 S.W.2d 588 (2001); *Brooks v. Director, supra.* Substantial evidence is such evidence as a reasonable mind might accept as adequate to support a conclusion. *Bennett v. Director, supra.*

Pursuant to Ark. Code Ann. § 11-10-514(a) (Repl. 2002), an individual shall be disqualified for employment benefits if he is discharged from his last work for misconduct in connection with the work. If the discharge was for misconduct in the form of dishonesty, he or she shall be disqualified from the date of filing the claim until he or she shall have ten weeks of employment in each of which he or she shall have earned wages equal to at least his weekly benefit amount. Ark. Code Ann. § 11-10-514(b) (Repl. 2002).

█   We have said that the term "misconduct," as used in this statute, involves disregard of the employer's interests, violation of the employer's rules, disregard of the standards of behavior which the employer has the right to expect of his employees, and disregard of the employee's duties and obligations to his employer. *Nibco, Inc. v. Metcalf*, 1 Ark. App. 114, 613 S.W.2d 612 (1981).

> To constitute misconduct, however, the definitions require more than mere inefficiency, unsatisfactory conduct, failure in good performance as the result of inability or incapacity, inadvertencies, ordinary negligence in isolated instances, or good faith error in judgment or discretion. There must be an intentional or deliberate violation, a willful or wanton disregard, or carelessness or negligence of such degree or recurrence as to manifest wrongful intent or evil design.

*Id.* at 118, 613 S.W.2d at 614.

In the present case, the Board of Review based its conclusion that appellant was discharged for misconduct in connection with the work on account of dishonesty on the following findings of fact:

> The claimant worked in the finishing work cell. On October 26, 2002, while working, the claimant injured his left hand, for which he underwent surgery. The claimant was placed on light duty and since that time he has continued to work under this restriction. In late April, the claimant coiled hose, which was classified as work outside the scope of his restriction. The claimant used [another employee's] number to log the work. This was brought to management's attention, and the claimant was discharged for falsifying company records.

At the hearing, Snyder was asked several times by the Appeal Tribunal hearing officer why he used another employee's number, instead of his own, in signing off on work that he had performed:

HEARING OFFICER:   Why didn't you use your own number?

SNYDER: Well, I should have, but I didn't.

HEARING OFFICER: Why didn't you?

SNYDER: Because Kellay Rand was going to use it to finish under his number.

HEARING OFFICER: Why did you use, Mr. Snyder, someone else's number rather than your own number?

SNYDER: There is no real reason.

HEARING OFFICER: There had to be a reason for you not to use your number. What were you attempting to hide or conceal?

SNYDER: I wasn't trying to attempt anything.

HEARING OFFICER: Well, why didn't you use your number?

SNYDER: Well, like I said, I have no excuse, for not, I should have.

HEARING OFFICER: Were you supposed to be doing this type of work?

SNYDER: Technically, no.

HEARING OFFICER: Why?

SNYDER: Well, I was limited to one hand.

HEARING OFFICER: You were on light-duty work?

SNYDER: Right.

From this series of questions and answers, it is clear that Snyder knew he had been limited by his employer to light-duty work; that he knew Kellay Rand's job was not light-duty work; that he knew he was not supposed to use another employee's number in signing off on work that he performed; and that he knew he was wrong to have used Rand's number on this occasion. Furthermore, later in the hearing, Snyder testified that he agreed with his employer that using Rand's employee number was "a bad mistake, [and he] should not have done it." Snyder even agreed that his action justified disciplinary action, such as a warning or a three-day suspension without pay, but he did not think that his mistake justified being fired. Snyder never claimed that he did not know about his employer's prohibition against using another employee's number to sign off on work that he performed. Rather, he thought that his punishment was too harsh, and he complained

that he was not aware he could be fired for using another employee's number.

▮ The dissenting judges consider it noteworthy that the Board of Review made no finding that Snyder had been warned that using another employee's number on work he performed would result in his discharge. It is not the function of the Employment Security Division, the Appeal Tribunal, or the Board of Review to determine which infractions of an employer's rules justify an employee's discharge. Rather, it is the function of those agencies to determine whether the employee was discharged for misconduct in connection with the work. *See Baldor Elec. Co. v. Arkansas Empl. Sec. Dep't*, 71 Ark. App. 166, 27 S.W.3d (2000). On the basis of the evidence presented at the hearing, the Appeal Tribunal concluded:

> The claimant admitted that while medically restricted to light-duty work, he performed work that included heavy lifting and used Rand's employee number to log the work. His actions were dishonest. Therefore, the claimant was discharged from last work for misconduct in connection with the work on account of dishonesty.

▮ The Board of Review adopted the decision of the Appeal Tribunal. It is the duty of this court to affirm the decision of the Board of Review if it is supported by substantial evidence. *See Bennett, supra.* It is difficult to imagine how evidence of an employee's dishonesty could be any more substantial than to have the employee admit that he knew of his employer's policy, admit that he violated it, admit that he knew he was violating it, and offer as the only explanation for his conduct that, "I made a bad mistake. I shouldn't have done it."

The dissenting judges also consider it significant that the Board of Review made no finding that Snyder was untruthful when he testified that he had earlier, at the request of his supervisor, performed work that was outside his medical restriction. While it is true that Snyder testified that he had been requested by his supervisor to coil hoses on an earlier occasion, he also testified that on that occasion he used his own employee number to sign off on the work that he performed. He offered no explanation as to why he used his own number on the earlier occasion but Rand's number on the occasion that led to his discharge. The Board of Review concluded that Snyder was discharged not for misconduct in performing work outside his medical restriction,

but for dishonesty in falsifying the work order that the company used to determine who performed the work on the hoses.

█ Because reasonable minds could conclude, on this evidence, that appellant intentionally falsified his employer's records to conceal the fact that he had performed certain work, we affirm the Board's decision.

Affirmed.

PITTMAN, VAUGHT, and CRABTREE, JJ., agree.

GRIFFEN, J., concurs.

STROUD, C.J., HART, ROBBINS, and BAKER, JJ., dissent.

JOHN B. ROBBINS, Judge. Today a five-judge majority of a nine-judge expanded panel of our court has affirmed the denial of unemployment benefits to an employee who was discharged for nothing more than being a team player and helping one of his employer's crews complete a task. I respectfully disagree with their decision and dissent.

Arkansas Code Annotated section 11-10-514(a) provides that a claimant shall be disqualified from receiving benefits for eight weeks if he has been discharged from his last employment for misconduct in connection with the work. Arkansas Code Annotated section 11-10-514(b) recognizes a heightened degree of misconduct that disqualifies a claimant until he subsequently has ten weeks of employment. These more serious forms of misconduct include (1) dishonesty, (2) drinking on the job, (3) reporting for work under the influence of intoxicants or a controlled substance, (4) testing positive on a drug screen, and (5) a willful violation of a bona fide rule or custom of the employer pertaining to the safety of fellow employees, persons or company property.

In an apparent recognition that additional findings of fact are needed to shore up the Board's decision, the majority's opinion makes its own findings, including the following:

1) that Snyder knew Kellay Rand's job was not light-duty work;
2) that Snyder knew that he was wrong in using Rand's number on this occasion;
3) that Snyder agreed that his action justified disciplinary action;
4) that Snyder never claimed that he did not know about his employer's prohibition against using another employee's number;

5) that Snyder has used his own number on earlier occasions when his supervisor had requested him to coil hose; and

6) that Snyder intentionally used Rand's number for the purpose of concealing the fact that he had performed this work.

Even if all of these findings could be pertinent and could be supported by a review of the evidence in the record, such findings are irrelevant for at least two reasons. First, we do not make findings, we review findings of the Board, and the Board made no such findings. Secondly, these findings might lend some support to a conclusion that Mr. Snyder was guilty of the type of misconduct designated as (5) above, *i.e.*, a willful violation of a bona fide rule or custom of his employer pertaining to the safety of fellow employees, persons or company property, but the Board did not base its decision on such a conclusion. Rather it held that Mr. Snyder's misconduct was dishonesty.

It is noteworthy that the Board neither found that Mr. Snyder had been warned at any time that logging work under another employee's number would subject him to a discharge, nor that he was untruthful when he testified that he had performed work outside his restrictions on earlier occasions at his supervisor's request.

Consistent with *Black's Law Dictionary* (1991), we have defined "dishonesty" as "a disposition to lie, cheat or defraud; untrustworthiness; lack of integrity." *Olson v. Everett, Director*, 8 Ark. App. 230, 650 S.W.2d 247 (1983). Here, at the very worst, the claimant committed a good-faith error in judgment or discretion, devoid of wrongful intent or evil design. This falls short of constituting misconduct within the meaning of Ark. Code Ann. § 11-10-514(a), and even further short of the more serious forms of misconduct described in § 11-10-514(b). Consequently, the Board's conclusion that claimant committed misconduct by being dishonest, as we have defined the term, is not supported by its scant findings of fact.

The legislature has declared that the public policy in Arkansas is to provide benefits to workers who are unemployed through no fault of their own. Ark. Code Ann. § 11-10-102(3). The statutory misconduct provisions of the unemployment compensation law must be given an interpretation consistent with that declared policy, and it should not be so literally construed as to effect a

forfeiture of benefits by an employee except in clear cases of misconduct. *Willis Johnson Co. v. Daniels*, 269 Ark. 795, 601 S.W.2d 890 (1980).

What suffices to support termination from employment and what suffices to disqualify one from unemployment benefits are two different inquiries. Public policy is not served, and we do Mr. Snyder a significant disservice when we deny him unemployment benefits; we add insult to injury by affirming a conclusion that he has a disposition to lie, cheat, or defraud.

I would reverse the Board's decision and remand for an award of benefits.

Stroud, C.J., Hart, and Baker, JJ., join in this opinion.