Stephanie COKER  *v.*  DIRECTOR, DEPARTMENT of
WORKFORCE SERVICES, and James Law Firm

E 07-50                                           262 S.W.3d 175

Court of Appeals of Arkansas
Opinion delivered September 12, 2007

Appeal from the Arkansas Board of Review; affirmed.

Appellant, pro se.

*Phyllis Edwards,* for appellee Dep't of Workforce Services.

DAVID M. GLOVER, Judge. In this unbriefed unemploy-ment case, appellant, Stephanie Coker, was initially de-nied unemployment benefits at the department level, but the Appeal Tribunal reversed that decision and awarded her benefits. Coker's employer, the James Law Firm, then appealed the appeal-tribunal decision to the Board of Review, which reversed the Appeal Tribunal and denied her application for unemployment benefits on the basis that she was discharged from her last work for misconduct in connec-tion with the work. Coker now appeals to this court, arguing that there was not substantial evidence to support the Board of Review's finding. We affirm the Board of Review's denial of benefits.

A person will be disqualified for unemployment benefits if it is found that she was discharged from her employment on the basis of misconduct in connection with the work. Ark. Code Ann. § 11-10-514(a)(1) (Repl. 2002). In *Johnson v. Director,* 84 Ark. App.

349, 351-52, 141 S.W.3d 1, 2-3 (2004), this court set forth both the definition of "misconduct" as well as the well-settled standard of review in unemployment cases:

> "Misconduct," for purposes of unemployment compensation, involves: (1) disregard of the employer's interest; (2) violation of the employer's rules; (3) disregard of the standards of behavior which the employer has a right to expect; and (4) disregard of the employee's duties and obligations to his employer. *Rossini v. Director*, 81 Ark. App. 286, 101 S.W.3d 266 (2003). To constitute misconduct, however, the definitions require more than mere inefficiency, unsatisfactory conduct, failure in good performance as the result of inability or incapacity, inadvertencies, ordinary negligence in isolated instances, or good-faith errors in judgment or discretion. *Id.* Instead, there is an element of intent associated with a determination of misconduct. *Blackford v. Director*, 55 Ark. App. 418, 935 S.W.2d 311 (1996). There must be an intentional and deliberate violation, a willful and wanton disregard, or carelessness or negligence of such a degree or recurrence as to manifest wrongful intent or evil design. *Rossini v. Director, supra.* Misconduct contemplates a willful or wanton disregard of an employer's interest as is manifested in the deliberate violation or disregard of those standards of behavior which the employer has a right to expect from its employees. *Blackford v. Director, supra.*

> Whether an employee's actions constitute misconduct in connection with the work sufficient to deny unemployment benefits is a question of fact for the Board. *Thomas v. Director*, 55 Ark. App. 101, 931 S.W.2d 146 (1996). Our standard of review of the Board's findings of fact is well settled:

>> We do not conduct a *de novo* review in appeals from the Board of Review. In appeals of unemployment compensation cases we instead review the evidence and all reasonable inferences deducible therefrom in the light most favorable to the Board of Review's findings. The findings of fact made by the Board of Review are conclusive if supported by substantial evidence; even when there is evidence upon which the Board might have reached a different decision, the scope of judicial review is limited to a determination of whether the Board could have reasonably reached its decision based on the evidence before it. Substantial evidence is such evidence as a reasonable mind might accept as adequate to support a conclusion.

*Snyder v. Director*, 81 Ark. App. 262, 263, 101 S.W.3d 270, 271 (2003). Additionally, the credibility of witnesses and the weight to be accorded their testimony are matters to be resolved by the Board of Review. *Williams v. Director*, 79 Ark. App. 407, 88 S.W.2d 427 (2002).

Here, Coker was employed at the James Law Firm as a receptionist/secretary for approximately two weeks before being fired. At the hearing, Toni Coleman, a paralegal at the law firm, testified that on the morning in question, the firm was busy and there were numerous motions that needed to be filed at the courthouse. Coleman said that Coker had told her on several prior occasions that she needed to go to Office Depot, and that Coker had told her again that morning, to which Coleman had responded that Coker did not have time for Office Depot that day. Coleman testified that she later learned that Coker procured the office credit card from another firm employee, went to the courthouse, went to Office Depot, picked up her lunch, and arrived back at the office three hours later.

Coker testified that she was a receptionist/secretary for the law firm from October 2 until October 12, 2006, when she was fired by Bill James, an owner of the firm. Coker explained that she got the company credit card from Joe Barraza, another paralegal at the firm, and that he told her to go to Office Depot because she had to return a keyboard and purchase some office supplies. She explained that she was gone for three or four hours because she had to take motions to the courthouse and because Barraza sent her on other errands, including Office Depot. Coker stated that she told Barraza that Coleman did not want her to go to Office Depot that day, but that Barraza told her to go ahead and to go then because James was out of the office and it was better to go at that time. Coker said that she purchased the office supplies on her list, including the cheapest calendar she could find so that she could keep track of when to send out letters to clients regarding their court dates.

When questioned by the hearing officer about whether she went back to Coleman and told her that Barraza had told her to go to Office Depot after Coleman had told Coker not to go, Coker said that she did not let Coleman know. However, Coker said that she asked Barraza to let Coleman know that he had told Coker to go to Office Depot if Coleman asked where she was and that Barraza said that he would take care of it. Coker testified that she did not check with Coleman to see if Barraza had spoken with her

and that she just assumed that he had "covered it." Coker also said that she used her debit card to pay for an office key to be made for her because Barraza told her that James wanted her to have a key.

Under questioning by James, Coker said that Coleman had told her not to go to Office Depot on the day she was dismissed, but that Barraza had told her to go because James was out of the office. James asked Coker if she would agree that she got an office key made without authorization, and Coker told him that she did not have authorization from him, but that Barraza had told her that James wanted a key made for her. Coker admitted that she was gone for four hours that day, but she said that she went to the courthouse, to city hall, to the sheriff's office, back to the office and to Office Depot, and then she took her one-hour lunch.

Joe Barraza testified that Coker was terminated for taking too long running errands and for unauthorized credit-card purchases. Barraza said that Coker asked him if she could go to Office Depot and that he told her "yes." However, he stated that Coker did not tell him that Coleman had told her earlier not to go to Office Depot when he gave her permission to go. Barraza said that he told Coker to buy a calendar and that he gave her an office key. Barraza said that he did not recall that there was a deadline for returning the keyboard to Office Depot. He also denied that Coker told him that Coleman did not want her to go to Office Depot and that he said to go anyway.

In denying Coker's claim on the basis of misconduct connected with the work, the Board of Review found that Coker "had been directed by one supervisor not to go to Office Depot but circumvented that supervisor's authority by seeking permission from a second supervisor without informing him what the first supervisor had directed." We hold that there is substantial evidence to support the Board of Review's decision. Although Coker testified that she told Barraza that Coleman had told her not to go to Office Depot but Barraza told her to go anyway, Barraza flatly denied that Coker had told him that Coleman did not want her to go. The Board of Review believed Barraza's version, which it was entitled to do, and his testimony constitutes substantial evidence that Coker did not tell him that Coleman had already told her not to go to Office Depot before Coker came to him and received permission to go. Viewing the evidence and all reasonable inferences deducible therefrom in the light most favorable to the Board of Review's findings, we hold that Coker's actions constituted

misconduct in connection with the work. We therefore affirm the denial of unemployment benefits.

Affirmed.

PITTMAN, C.J., HART, ROBBINS, and HEFFLEY, JJ., agree.

GRIFFEN, J., dissents.

WENDELL L. GRIFFEN, Judge, dissenting. I would reverse and hold that the Board's decision on misconduct is not supported by substantial evidence. The claimant failed to get clarification concerning the conflicting instructions she was given. However, her actions were in no way detrimental to the employer's interest. Although Coleman and Barraza gave the claimant conflicting instructions, the claimant's purchases with the firm credit card were authorized by Barraza, and the claimant filed the pleadings that Coleman directed her to file.

I do not see how the claimant's conduct involved disregard of her employment duties and obligations, disregard of the standards of behavior for her workplace, violation of the employer's rules, or disregard for the employer's interest so as to constitute misconduct as that term is defined by *Grigsby v. Everett*, 8 Ark. App. 188, 649 S.W.2d 404 (1983). Instead, the evidence in this case does not demonstrate the intent required for misconduct. In that sense, this case warrants reversal even more than was true in *Greenberg v. Director*, 53 Ark. App. 295, 922 S.W.2d 5 (1996), where we reversed the Board of Review for denying benefits to a legal secretary who was rather inept.

Here, the claimant received conflicting instructions, and appears to have been fired for trying to accomplish the tasks she was assigned by Coleman and Barraza. She might have exercised better judgment, but I do not see how she intentionally acted contrary to the law firm's interests. Consequently, I vote to reverse and remand for benefits.