2009 Ark. App. 739

**SUBTEACH USA, Appellant,**

v.

**DIRECTOR, DEPARTMENT OF WORKFORCE SERVICES, and Lajuanda Coleman, Appellees.**

**No. E09–21.**

Court of Appeals of Arkansas.

Nov. 4, 2009.

Rehearing Denied Dec. 9, 2009.

Branch, Thompson, Warmath & Dale, P.A., by: Robert F. Thompson, III, Paragould, for appellant.

Allan Pruitt, Little Rock, for appellee Artee Williams, Director of Dep't of Workforce Servs.

KAREN R. BAKER, Judge.

SubTeachUSA challenges the Department of Workforce Services, the Arkansas Appeal Tribunal, and the Board of Review, all of which found that LaJuanda Coleman was eligible for unemployment benefits. The Board of Review (Board) affirmed the Appeal Tribunal's finding that Coleman did not perform services in an instructional capacity for an educational institution in

the previous academic term and did not have a reasonable assurance of returning to such work in the next academic term. On appeal, SubTeachUSA alleges that Arkansas Code Annotated section 11–10–509(a) (Supp.2009) is applicable to the facts of this case in that (1) Coleman provided instructional services for an educational institution, and (2) Coleman provided services in one academic year and contracted to provide services in the following year. We disagree with the arguments presented by SubTeachUSA and affirm the ͺ₂Board's decision.

SubTeachUSA is a private employer that hires, trains, and provides substitute teachers and other staff (such as cafeteria, custodial, and clerical workers) to various school districts. James Cole, president of SubTeachUSA, testified that the company had a contract for services with twenty-three school districts in Arkansas, including the Helena–West Helena School District. The contracts were limited to providing services to the school districts during the regular school year and excluded services for summer school. SubTeachUSA, therefore, did not provide work for the employees during the summer months. He explained that the employee's rate of pay was determined by the individual school district and that SubTeachUSA paid the employees thirty-five percent above the amount paid by the school district as compensation.

In August 2006, LaJuanda Coleman, who was previously employed directly by the Helena–West Helena School District, was hired by SubTeachUSA as a substitute teacher. She substitute taught on the Helena–West Helena School campus. Coleman testified that May 24, 2008, was her last day of work for the 2007–2008

school year.[1] She testified that her employment contract with SubTeachUSA was for the school year and that she had signed a letter of intent to return to work in August 2008.

Coleman testified that her duties as a substitute teacher were to follow the lesson plan provided by the teacher or, if no lesson plan was made available, to use her skills and ͺ₃experience to provide the students with the learning and instruction they needed. She explained that the services that she performed as a substitute teacher while employed by the school district were exactly the same duties that she performed while employed by SubTeachUSA. She noted that the only difference was that she received a paycheck from SubTeachUSA rather then the school district.

Concerning SubTeachUSA's services, Mr. Cole testified that "[w]e consider SubTeach USA to be an educational services provider." He stated, "We consider that our substitute teachers are performing in an instructional capacity for an educational institution, because we send them into classrooms to implement lesson plans." He explained that SubTeachUSA's substitute teachers have identical duties to the substitute teachers employed by the school district and that SubTeachUSA maintains the same qualifications for its substitute teachers as required by state law.

The Department of Workforce Services determined that Coleman was currently between terms with her employer, which was not considered to be an educational institution, and determined that Coleman did not have reasonable assurance in the second term to perform services for an educational institution. The Appeal Tribu-

1. She left work four days before the end of the 2008 school year due to a necessary medical procedure.

nal affirmed the Department of Workforce Services' decision to allow benefits, finding that Coleman worked for SubTeachUSA, which was not an educational institution; therefore, Coleman did not work as an instructor for an educational institution in an academic year and did not have a reasonable assurance of work for an educational institution during a following academic year. The Board affirmed the award of benefits on the basis that Coleman did not perform services in an instructional capacity for an educational institution in an academic term and did not have a reasonable assurance of performing such services for an educational institution in the next academic term. This appeal followed.

Our standard of review of the Board's findings of fact is well settled: We do not conduct a de novo review in appeals from the Board of Review. In appeals of unemployment compensation cases we instead review the evidence and all reasonable inferences deducible therefrom in the light most favorable to the Board of Review's findings. The findings of fact made by the Board of Review are conclusive if supported by substantial evidence; even when there is evidence upon which the Board might have reached a different decision, the scope of judicial review is limited to a determination of whether the Board could have reasonably reached its decision based on the evidence before it. Substantial evidence is such evidence as a reasonable mind might accept as adequate to support a conclusion. *Coker v. Director,* 99 Ark.App. 455, 456–57, 262 S.W.3d 175, 176 (2007). Additionally, the credibility of witnesses and the weight to be accorded their testimony are matters to be resolved by the Board of Review. *Williams v. Director,* 79 Ark.App. 407, 88 S.W.3d 427 (2002).

SubTeachUSA alleges that Arkansas Code Annotated section 11–10–509(a) is applicable to the facts of this case in that (1) Coleman provided instructional services for an educational institution, and (2) Coleman provided services in one academic year and contracted to provide services in the following year. Arkansas Code Annotated section 11–10–509(a)(1) and (2) (Supp.2009), states that

> [w]ith respect to service performed in an instructional, research, or principal administrative capacity *for an educational institution,* benefits shall not be paid based on services for any week of unemployment commencing during the period between two (2) successive academic years or terms, during a similar period between two (2) regular but not successive terms, or during a period of paid sabbatical leave provided for in the individual's contract to any individual if:
>
> (1) The individual performs the services in the first of the academic years or terms; and
>
> (2) There is a contract or a reasonable assurance that the individual will perform services in any such capacity for any educational institution in the second of the academic years or terms.

(Emphasis added.)

SubTeachUSA alleges that there is no requirement in the plain language of the statute that requires that Coleman be employed by an educational institution. Rather, SubTeachUSA alleges that the plain language only requires that Coleman *perform services in* an educational institution. SubTeachUSA alleges that to impose the requirement that Coleman be employed by the school would "be effectively to re-write the statute, destroying legislative intent." We disagree.

Arkansas Code Annotated section 11–10–509(d)(1) states that, with respect to

any services described in subsections (a) and (b) of this section, compensation payable on the basis of services in any such capacity shall be denied as specified in subsections (a)-(c) of this section to any individual who performed the services in an educational institution while in the employ of an educational-service agency. For purposes of this subdivision, the term "educational service agency" means a governmental agency or governmental entity which is established and operated exclusively for the purpose of providing such services to one (1) or more educational institutions. Ark.Code Ann. § 11–10–509(d)(2).

SubTeachUSA claims that it is an educational institution. However, the statutes simply do not contemplate a private company such as SubTeachUSA. To the extent that there is any ambiguity in the statutes regarding its application to a private company such as SubTeachUSA, we must defer to the agency interpretation. *See Seiz Co. v. Ark. State Highway & Transp. Dep't*, 2009 Ark. 361, 324 S.W.3d 336 (stating that the interpretation placed on a statute or regulation by an agency or department charged with its administration is entitled to great deference and should not be overturned unless clearly wrong); *see also Teston v. Ark. State Bd. of Chiropractic Exam'rs*, 361 Ark. 300, 312–13, 206 S.W.3d 796, 805 (2005) (quoting *AT & T Commc'ns of the Sw., Inc. v. Ark. Pub. Serv. Comm'n*, 344 Ark. 188, 196–97, 40 S.W.3d 273, 280 (2001)) ("Raising such constitutional issues before the Commission is significant even when a statute is challenged as unconstitutional on its face, especially because the interpretation given by the agency charged with its execution is highly persuasive.").

Because there is substantial evidence to support the Board's finding, we affirm the Board's award of benefits. Moreover, because we affirm the Board's finding that SubTeachUSA is not an educational institution per the language of Arkansas Code Annotated section 11–10–509, we also affirm the Board's determination that Coleman could not be considered as having a reasonable assurance of work in the next academic term from an educational institution.

Affirmed.

PITTMAN, ROBBINS, and BROWN, JJ., agree.

KINARD and MARSHALL, JJ., dissent.

M. MICHAEL KINARD, Judge, dissenting.

I write not to expand or limit the well-reasoned dissent of my colleague, Judge Marshall, with whom I agree both in content and conclusion. I too would reverse the Department of Workforce Services, the Arkansas Appeal Tribunal, and the Arkansas Board of Review in their determination that unemployment benefits are applicable in this case. That conclusion compels me to respectfully dissent from the majority, and I would reverse the grant of unemployment compensation based on what I view as a contravention of the stated policy of the Arkansas Employment Security Law (Act 155 of 1937), which specifies that the public policy stated in the preamble of the Act is to be used as a guide to the interpretation and application of the employment security statute.

Section (3) of the preamble in its amended form states that the General Assembly declares that in its considered judgment the public good and general welfare of the citizens of Arkansas require the enactment of such law "for the compulsory setting aside of unemployment reserves to be used for the benefit of persons unem-

ployed *through no fault of their own.*[1] (Emphasis added.) This emphasizes language absent in the 1941 Act that was added back in the law by the General Assembly in Act 155 of 1949. The language of Act 391 ₈of 1941 did not contain the qualifying language "through no fault of their own." The insertion of that qualification in the 1949 Act clearly expressed the intent of the General Assembly to exclude from receiving unemployment compensation persons who meet the criteria of Arkansas Code Annotated section 11–10–509(a)(1) and (2), to wit teachers in the public schools of this state. As codified in Arkansas Code Annotated section 11–10–102(3), this preamble, as amended, becomes the statement of policy, which must be considered when interpreting the Arkansas Employment Security Law. *Little Rock Furniture Mfg. Co. v. Comm'r of Labor,* 227 Ark. 288, 298 S.W.2d 56 (1957).

In the instant case the claimant was hired by appellant in August 2006, taught in the Helena–West Helena School District during the 2007–08 school year, and signed an agreement to work as a substitute teacher at Helena–West Helena School District during the 2008–09 school year. The claimant testified that she intended to return to the school during 2008–09. Thus, the employment gap experienced by the claimant was anticipated by all parties consistent with the normal summer break experienced by regular contract teachers.

The interpretation of the employment agreement between SubTeachUSA, Helena–West Helena School District, and the claimant by the Board of Review and the majority and their interpretation of Arkansas Code Annotated section 11–10–509 provides unemployment benefits for outsourced substitute teachers, a benefit the General Assembly has clearly denied regular contract substitute teachers. Because I do not believe the parties in this case—or the General Assembly—intended that result, I agree with Judge Marshall that we should reverse the Board of Review.

MARSHALL, J., joins in this dissent.

D.P. MARSHALL JR., Judge, dissenting.

School teachers (and other similarly situated individuals) are not entitled to unemployment benefits during breaks if they are reasonably assured that they will have a job after the break. Ark.Code Ann. § 11–10–509 (Supp.2009). Is a substitute teacher, who is under contract to do the same work during the coming school year, entitled to unemployment benefits during the intervening summer? The Board of Review answered yes—mainly because, rather than being employed by a school district, the teacher was employed by a

---

1. Arkansas's original recognition of the right to unemployment compensation was by Act 155 of 1937, which included a declaration of state public policy for the "setting aside of unemployment reserves to be used for the benefit of persons unemployed *through no fault of their own.*" (Emphasis added.) The General Assembly addressed the subject more broadly in Act 391 of 1941, which is generally cited as the "Arkansas Employment Security Law." Although the Declaration of Public Policy section left out the "through no fault of their. own" language, this omission was corrected by the General Assembly in Act 155 of 1949 when the "no fault" language was reinstated.

When the General Assembly passed Act 35 of 1971 excepting certain employees of institutions of higher education, and when it passed Act 922 of 1979 to provide an exception from benefits for certain "educational institution" employees performing service in "an instructional, research, or principal administrative capacity," it did not alter the 1949 Declaration of Public Policy. Therefore, the "no fault of their own" language remains. It is now codified at Ark.Code Ann. § 11–10–102(3) (Repl.2002).

company that provided substitutes to school districts. We should reverse the Board's misreading of the governing statute.

1. The Department and SubTeachU-SA, Inc., agreed on the essential facts. LaJuanda Coleman used to work for the Helena–West Helena School District as a substitute teacher. After the District contracted with SubTeachUSA to provide substitutes, Coleman went to work for that company. Here is her testimony about her work for both the District and SubTeachUSA:

> [Counsel for SubTeachUSA]: Were the services that you performed as a substitute teacher any different after SubTeachUSA took over?
>
> [Coleman]: No.

> [Counsel for SubTeachUSA]: So basically, regardless of whether the check was coming from SubTeachUSA, the job that you were doing was the same, is that correct?
>
> [Coleman]: Yes, that's correct.

During the 2007–2008 school year, she substituted in the Helena–West Helena District through SubTeachUSA. She had a contract with the company to do the same work in the same District during the 2008–2009 school year. Coleman sought unemployment benefits for the intervening summer. SubTeachUSA appeals the Department's decision awarding Coleman benefits.

2. SubTeachUSA's appeal asks a question of law: what does § 11–10–509 **

** § 11-10-509. Eligibility—Employees of educational institutions.

(a) With respect to service performed in an instructional, research, or principal administrative capacity for an educational institution, benefits shall not be paid based on services for any week of unemployment commencing during the period between two (2) successive academic years or terms, during a similar period between two (2) regular but not successive terms, or during a period of paid sabbatical leave provided for in the individual's contract to any individual if:

(1) The individual performs the services in the first of the academic years or terms; and

(2) There is a contract or a reasonable assurance that the individual will perform services in any such capacity for any educational institution in the second of the academic years or terms.

(b)(1) With respect to services performed in any other capacity for an educational institution, benefits shall not be paid on the basis of services to any individual for any week of unemployment that commences during a period between two (2) successive academic years or terms if:

(A) The individual performs the services in the first of the academic years or terms; and

(B) There is a reasonable assurance that the individual will perform the services in the second of the academic years or terms.

(2)(A) If compensation is denied to an individual under subdivision (b)(1) of this section and the individual was not offered an opportunity to perform the services for the educational institution for the second of the academic years or terms, the individual, if otherwise eligible, is entitled to a retroactive payment of compensation for each week for which the individual filed a timely claim for compensation and for which compensation was denied solely by reason of subdivision (b)(1) of this section.

(B) The individual shall apply for the retroactive payment described in subdivision (b)(2)(A) of this section within two (2) weeks after receipt of notification from the educational institution that he or she will not have an opportunity to perform the services at that educational institution in the second academic year or term.

(c) With respect to any services described in subsection (a) or (b) of this section, compensation payable on the basis of these services shall not be payable to any individual for any week of unemployment that commences during an established and customary vacation period or holiday recess if:

(1) The individual performs these services in the period immediately before a vacation or holiday recess; and

(2) There is a reasonable assurance that the individual will perform the services in the

mean on these undisputed facts? The Board couched its ultimate decision in terms of findings. But that label cannot obscure the purely legal issue our Court must decide. Because all the key facts were undisputed, the substantial-evidence standard does not apply. This Court's repeated invocation of that standard is mistaken.

In general, appellate review of statutory-construction questions is *de novo:* "[I]t is for this court to decide what a statute means." *MacSteel Division of Quanex v. Arkansas Oklahoma Gas Corp.*, 363 Ark. 22, 29, 210 S.W.3d 878, 882 (2005). We must focus first on § 11–10–509's words. And if those words are plain and clear, our work is done.

The Supreme Court summarized this settled law in the *Yamaha Motor* case.

> The first rule in considering the meaning and effect of a statute is to construe it just as it reads, giving the words their ordinary and usually accepted meaning in common language. When the language of a statute is plain and unambiguous, there is no need to resort to rules of statutory construction. In other words, if the language of the statute is plain and unambiguous, the analysis need go no further.

*Yamaha Motor Corp., U.S.A. v. Richard's Honda Yamaha*, 344 Ark. 44, 52, 38 S.W.3d 356, 360 (2001) (internal citations omitted); *see generally* Michael W. Mullane, *Statutory Interpretation in Arkansas: How Should a Statute Be Read? When Is It Subject to Interpretation? What Our Courts Say and What They Do*, 2004 ARK. L. NOTES 85.

Here are the General Assembly's disputed words. "With respect to service performed in an instructional, research, or principal administrative capacity for an educational institution, benefits shall not be paid … for any week of unemployment … between two (2) successive academic years or terms …." Ark.Code Ann. § 11–10–509(a). These controlling words, though perhaps a bit clunky, are plain and clear. And giving the words in this broadly written introductory phrase their ordinary and usually accepted meaning yields one conclusion: Coleman was ineligible for benefits during the summer of 2008.

She was a substitute teacher. She thus performed a service in an instructional capacity. She was under contract, through SubTeachUSA, to do this work for the Helena–West Helena School District—an educational institution—on both sides of the summer 2008 break. On the undisputed facts, the plain meaning of § 11–10–509(a) undermined Coleman's claim for benefits.

In a sense, the case boils down to the ordinary meaning of the statutory word "for." This Court, echoing the Board, reads "for" to mean "while employed by." This reading comes with at least two problems. First, the General Assembly spoke in broad and general terms in § 11–10–509(a). It is neither the Board's office nor ours to strike a capacious word from a statute and replace it with a narrowing phrase. *E.g., Arkansas Dep't of Econ.*

period immediately following the vacation period or holiday recess.

(d)(1) With respect to any services described in subsections (a) and (b) of this section, compensation payable on the basis of services in any such capacity shall be denied as specified in subsections (a)-(c) of this section to any individual who performed the services in an educational institution while in the employ of an educational service agency.

(2) For purposes of this subdivision, the term "educational service agency" means a governmental agency or governmental entity which is established and operated exclusively for the purpose of providing such services to one (1) or more educational institutions.

*Dev. v. William J. Clinton Presidential Foundation,* 364 Ark. 40, 47–50, 53, 216 S.W.3d 119, 124–25, 128 (2005).

Second, reading "for an educational institution" as "while employed by an educational institution" ignores the "ordinary and usually accepted meaning in common language[ ]" of the word "for." *Yamaha Motor,* 344 Ark. at 52, 38 S.W.3d at 360. If I thank the plumber for fixing my leaky faucet, she will not say "you're welcome, but I did not do it for you, I did it for my employer, XYZ Plumbing, Inc." In law, an agent (such as the plumber or Coleman) is acting for her principal and for the benefit of a third party (such as me or the School District). But precedent requires us to use plain meaning, not lawyer's meaning. The statute's "for" means—as it would to the common reader or speaker—for the District's benefit. CONCISE OXFORD ENGLISH DICTIONARY 553 (10th ed., rev.2002).

The Helena–West Helena School District must provide substitute teachers. It does so through SubTeachUSA. Coleman and the rest of those substitutes are providing instructional services for the District. Would a parent say that Coleman was a substitute teacher for SubTeachUSA? No. The parent would say that she was a substitute teacher for the school. Our analysis of what § 11–10–509(a) means should therefore go "no further." *Yamaha Motor,* 344 Ark. at 52, 38 S.W.3d at 360.

3. Is this statute ambiguous? Is it, in the words of our cases, "open to two or more constructions" or "of such obscure or doubtful meaning that reasonable minds might disagree or be uncertain as to its meaning"? *Ibid.* I do not think so. Neither the Department's Appeal Tribunal nor the Board of Review saw any ambiguity. And the Department does not argue ambiguity on appeal. Yet the Court, in its alternative holding, discusses ambiguity.

The Court says that, if there is ambiguity, then we must defer to the Department's interpretation. This is a correct but incomplete statement of law. First, absent ambiguity, plain meaning governs and the Department's interpretation is beside the point. *Yamaha Motor,* 344 Ark. at 52, 38 S.W.3d at 360. Second, while the implementing agency's interpretation of an ambiguous statute is highly persuasive and should not be disregarded unless clearly wrong, *ibid.,* appellate review does not stop with the agency's word. When the meaning of any statute is unclear, the court must "look to the language of the statute, the subject matter, the object to be accomplished, the purpose to be served, the remedy to be provided, the legislative history, and other appropriate means that shed light on the subject." *MacSteel,* 363 Ark. at 30, 210 S.W.3d at 882–83.

Here, the Department's reading of § 11–10–509 fails on its own terms and on the more searching inquiry the law requires of a reviewing court facing an ambiguous statute. Why did the Department conclude that this statute did not cover Coleman? Because SubTeachUSA, not the School District, employed her. The Department did not analyze the statute's words, object, or purpose. The Department did not rely on its expertise or some long-standing agency interpretation. *Cf. Yamaha Motor,* 344 Ark. at 52, 38 S.W.3d at 360. The Department did cite the statute's title, which speaks of employees of educational institutions and thus weighs in favor of the Department's interpretation. But this title, it seems, came from the Arkansas Code Revision Commission, not the General Assembly. *Cf.* Ark. Stat. Ann. § 81–1105(g) (Supp.1985), *with* Ark.Code Ann. § 11–10–509 (Michie 1987). More importantly, a title is not dispositive of an ambiguous statute's meaning. *Baker Refrigeration Systems, Inc. v. Weiss,* 360

Ark. 388, 400–01, 201 S.W.3d 900, 907 (2005). The core of the Department's decision was the undisputed fact about who employed Coleman. There simply is no other why in the Department's decision.

The Court says that SubTeachUSA claims that it is an educational institution. *Supra* at 852. SubTeachUSA makes no such claim or argument. Instead, the company's straightforward contention is that its employees provide instructional services for educational institutions such as the Helena–West Helena District. And therefore, the company continues, those employees are ineligible for unemployment benefits under § 11–10–509 during the summers between school years. SubTeachUSA is correct.

If this statute is ambiguous on this issue, then other appropriate means for discerning its meaning support SubTeachUSA's interpretation. In a later subsection, the General Assembly used the phrase "in the employ of an educational service agency" to describe a class of individuals. Ark. Code Ann. § 11–10–509(d)(1). The Legislature's choice of this locution for another subsection, but not the one in dispute, cuts against reading a school-employment criterion into § 11–10–509(a). *Russello v. United States*, 464 U.S. 16, 23, 104 S.Ct. 296, 78 L.Ed.2d 17 (1983).

Finally, the purpose of this subsection is manifestly to exclude returning teachers (and others similarly situated) from receiving unemployment benefits in the summer. These individuals have jobs that, by definition, include periods when they are not working. That purpose covers SubTeachUSA's employees as surely as it does the District's employees. Considered in light of its purpose and language as a whole, § 11–10–509 covers Coleman and SubTeachUSA. Coleman recognized this truth in her application for benefits: "I am not working now because school is out for the summer."

4. I respectfully dissent from the Court's decision that Coleman was entitled to benefits. That her employer is now SubTeachUSA instead of the District should make no legal difference under the wide net cast by the General Assembly in this statute.

KINARD, J., joins.