2010 Ark. 400

**SUBTEACH USA, Appellant**

v.

**Artee WILLIAMS, Director of Department of Workforce Services, and LaJuanda Coleman, Appellees.**

**No. 09–1276.**

Supreme Court of Arkansas.

Oct. 28, 2010.

Branch, Thompson, Warmath & Dale, P.A., by: Robert F. Thompson III, Paragould, for appellant.

Allan Pruitt, for appellee.

DONALD L. CORBIN, Justice.

Appellant SubTeach USA appeals the decision of the Arkansas Board of Review finding that Appellee LaJuanda Coleman was eligible for unemployment compensa-

tion benefits. The Board's decision affirmed findings and conclusions of the Appeal Tribunal and the Department of Workforce Services that Coleman's employer was not an educational institution, and therefore she did not meet the requirements of the between-terms exclusion from benefits for services performed in an instructional capacity for an educational institution, as provided in Ark.Code Ann. § 11–10–509 (Supp.2009). SubTeach USA first appealed to the Arkansas Court of Appeals, which issued a 4–2 decision affirming the award of benefits to Coleman. *SubTeach USA v. Director, Dep't of Workforce Servs.*, 2009 Ark. App. 739, 361 S.W.3d 850. We granted SubTeach USA's petition for review of that decision because this case presents a question of first impression with regard to our unemployment statutes. |₂Accordingly, jurisdiction is properly in this court pursuant to Ark. Sup. Ct. R. 1–2(b)(1) and (e)(iii) (2010). We find merit to SubTeach USA's argument, and therefore reverse and remand.

 Upon a petition for review, this court considers a case as though it had been originally filed in this court. *Texarkana Sch. Dist. v. Conner*, 373 Ark. 372, 284 S.W.3d 57 (2008). We affirm the decision of the Board of Review if it is supported by substantial evidence. *Mamo Transp., Inc. v. Williams*, 375 Ark. 97, 289 S.W.3d 79 (2008). When we are called upon to interpret provisions of the Arkansas Code, however, we conduct a de novo review of the statutory construction issues. *See id.*

Our review of the record reveals the following undisputed facts. Appellant SubTeach USA is a private employer that hires, trains, and provides substitute teachers and other staff to twenty-three school districts in the State of Arkansas, including the Helena–West Helena School District. The contract that Appellant SubTeach USA uses with its client school districts provides that SubTeach bills the districts in accordance with the rate set by the school board for substitute teachers plus thirty-five percent to cover various payroll taxes and workers' compensation insurance. The contract states that SubTeach USA is the employer of the substitute teacher and that once a substitute teacher is assigned to a school, the substitute is coemployed by the district.

In August 2006, Appellee LaJuanda Coleman, who was previously employed directly by the Helena–West Helena School District, was hired by SubTeach USA as a substitute |₃teacher. While employed by SubTeach USA, she taught as a substitute teacher on the Helena–West Helena School campus. Five days following her last day of work for the 2007–2008 school year, Appellee Coleman filed a claim for unemployment compensation benefits. Despite the coemployment relationship described in SubTeach USA's contract, the claim form that Appellee Coleman used to apply for benefits was a form designed for use when the employer is a temporary-help firm. In that claim form, Coleman stated that she was no longer working for the client Helena–West Helena School District because her assignment had ended. Coleman stated further in the form that she was "not working now because school is out for the summer."

The Department of Workforce Services held a telephone hearing on Coleman's claim for benefits. Coleman testified that the services she performed as a substitute teacher while employed by the school district were exactly the same duties that she performed while employed by SubTeach USA. She noted that the only difference

was that she received a paycheck from SubTeach USA rather than the school district. Appellee Coleman testified that she had a contract of employment with Sub-Teach USA for the 2007–2008 school year, that her last day of work for the 2007–2008 school year was May 24, 2008, and that she signed a letter of intent to return to work in August 2008 for the 2008–2009 school year.

James Cole, president of SubTeach USA, testified at the hearing that he considered SubTeach USA's employees to be performing in an instructional capacity for an educational institution "because we send them into the classroom to either implement the lesson plan left ⌊4 by the teacher or to provide additional instructional activities for the students." He explained that SubTeach USA's substitute teachers have identical duties to the substitute teachers employed by the school district and that SubTeach USA maintains the same qualifications for its substitute teachers as required by state law. Cole also testified that SubTeach USA's contracts are limited to providing services during the regular school year and exclude services for summer school.

The issue of first impression here presented is whether a claimant, such as Coleman, who worked during the school year as a substitute teacher at a public school district but received her paycheck from a private company that contracts with school districts to provide substitute teachers, is eligible for unemployment compensation benefits during the summer break, even though she had signed a letter of intent to return to work during the school year following the summer break. Phrased another way, the issue is whether a claimant who performs services *at* an educational institution *but is not employed by* the edu-

cational institution, is disqualified from receiving unemployment benefits during the summer break under section 11–10–509.

■ The statute at issue in this case was enacted by our General Assembly to bring our state unemployment compensation statutory scheme into compliance with federally mandated requirements of the Federal Unemployment Tax Act (FUTA). The Arkansas statute at issue reads in pertinent part as follows:

11–10–509. *Eligibility—Employees of educational institutions.*

⌊5 (a) With respect to service performed in an instructional, research, or principal administrative capacity for an educational institution, benefits shall not be paid based on services for any week of unemployment commencing during the period between two (2) successive academic years or terms, during a similar period between two (2) regular but not successive terms, or during a period of paid sabbatical leave provided for in the individual's contract to any individual if:

(1) The individual performs the services in the first of the academic years or terms; and

(2) There is a contract or a reasonable assurance that the individual will perform services in any such capacity for any educational institution in the second of the academic years or terms.

. . . .

(d)(1) With respect to any services described in subsections (a) and (b) of this section, compensation payable on the basis of services in any such capacity shall be denied as specified in subsections (a)-(c) of this section to any individual who performed the services in an educational

institution while in the employ of an educational service agency.

(2) For purposes of this subdivision, the term "educational service agency" means a governmental agency or governmental entity which is established and operated exclusively for the purpose of providing such services to one (1) or more educational institutions.

The Department of Workforce Services interpreted this statute and made a factual finding that Coleman was "currently between terms with [her] employer which is not considered to be an educational institution." The Department found further that Coleman did not "have reasonable assurance in the second term to perform services for an educational institution." The Department thus concluded that Coleman was eligible for benefits.

The Appeal Tribunal affirmed these findings, stating that "the *employer* is not an educational institution. Therefore, [Coleman] did not work as an instructor for an educational institution in an academic year and have a reasonable assurance of work for an educational institution during a following academic year."

The Board of Review in turn affirmed these findings, likewise basing its decision on the fact that Coleman's employer was an outside contractor rather than the school district or educational institution itself. The Board also found that the employer SubTeach USA, as a private agency, would not be considered an educational service agency so as to make the provisions of section 11–10–509(d) applicable.

On appeal, SubTeach USA argues that the Board's interpretation of section 11–

10–509 effectively rewrites the statute by adding language that is not there. SubTeach USA contends that there is no requirement in the statute that the person who performs the services for the educational institution actually be an employee of the educational institution. SubTeach USA argues that the focus of the statute is on the nature of the services performed rather than the identity of the employer.

The Department responds that the testimony was undisputed that Coleman was employed by SubTeach USA, which is not an educational institution, and thus there is substantial evidence to support that decision.[1] The Department responds further that since Coleman's employer is not an educational institution, the between-terms exclusion of benefits enunciated in section 11–10–509 does not apply to Coleman.

The issue in this case thus comes down to the meaning of the phrase "service performed ... for an educational institution" in section 11–10–509(a). The precise legal question presented is whether the word "for," as it is used in section 11–10–509(a), imposes a requirement that the person performing the services actually be "employed by" the educational institution. We conclude that the Board's decision erroneously read such a requirement into the plain language of the statute.

In determining the meaning of a statute, the first rule is to construe it just as it reads, giving the words their ordinary and usually accepted meaning in common language. *Mamo Transp.*, 375 Ark. 97, 289 S.W.3d 79. This court construes the statute so that no word is left void, superfluous, or insignificant, and meaning and

---

1. We note that, despite the language in its contract that a teacher is coemployed by the district once assigned to that district, Sub-

Teach USA does not dispute that SubTeach USA is indeed Coleman's employer.

effect are given to every word in the statute if possible. *Id.* When the language of a statute is plain and unambiguous and conveys a clear and definite meaning, there is no need to resort to rules of statutory construction. *Id.* However, this court will not give statutes a literal interpretation if it leads to absurd consequences that are contrary to legislative intent. *Id.*

Construing the statute just as it reads, giving the words their ordinary and usually accepted meaning in common language, we conclude that there is no express requirement in the text of section 11–10–509(a) that the person who performs the services "be employed by" an educational institution.[2] Rather, the requirement imposed by the text of the statutory language is that the service be performed "for an educational institution." To read section 11–10–509's disqualification from benefits during the summer break as applying only to persons actually employed by the educational institution is to read language into the statute that is simply not there and is to render the word "for" meaningless and insignificant on these facts. Coleman testified that she performed the same services for the same school as an employee of that school before the school began outsourcing the hiring of its substitute teachers to SubTeach USA. She also testified that the services she performed as a substitute teacher were not any different after SubTeach USA took over. Thus, if we were to interpret section 11–10–509's disqualification from benefits as applying only to employees of the educational institution, we would render the word "for" meaningless. In addition, such

an interpretation would lead to an absurd result—a substitute teacher performing services in a school is disqualified from benefits over the summer so long as she is employed directly by the school, but when that same school begins outsourcing that same teacher's job to a private employer, that same teacher is no longer disqualified from collecting benefits over the summer simply because the entity that signs her paycheck has changed and nothing more.

■ In summary, when we apply the undisputed facts presented here to the plain language of the statute, we conclude that Coleman was employed by SubTeach USA to perform services "for" an educational institution, the Helena–West Helena School District. Accordingly, we reverse the Board's decision finding that she was not disqualified from benefits.

SubTeach USA makes a second argument on appeal, and that is that all the elements of section 11–10–509 are satisfied, such that Coleman is disqualified from receiving benefits. We are precluded from considering the merits of this argument due to a lack of findings or rulings in this regard below. The language of section 11–10–509(a) disqualifies Coleman from receiving benefits between two academic terms *if* she performed services in an instructional capacity for an educational institution in the first of those terms *and if* she had a contract or reasonable assurance of returning to perform services for an educational institution in the following academic term. Because the Board's decision did not include an express ruling that the letter of intent Coleman signed did in fact constitute a contract or reasonable assur-

---

**2.** We reach this conclusion despite the title of the statute. Moreover, the titles and descriptive headings used in the Arkansas Code "do not constitute part of the law and shall in no manner limit or expand the construction of any section." Ark.Code Ann. § 1–2–115(b) (Repl.2008).

ance of her return to perform services for an educational institution, we must remand on this issue.

The decision of the Arkansas Board of Review is reversed and remanded. The decision of the Arkansas Court of Appeals is vacated.

DANIELSON, J., dissents.

PAUL E. DANIELSON, Justice, dissenting.

Whether the language of the statute is considered plain or ambiguous, it is clear to me that Arkansas Code Annotated § 11–10–509(a) applies to employees of educational institutions, just as the Board of Review found. I, therefore, would affirm and respectfully dissent.

At issue here is Ark.Code Ann. § 11–10–509, which provides:

(a) With respect to service performed in an instructional, research, or principal administrative capacity for an educational institution, benefits shall not be paid based ⌊10⌋on services for any week of unemployment commencing during the period between two (2) successive academic years or terms, during a similar period between two (2) regular but not successive terms, or during a period of paid sabbatical leave provided for in the individual's contract to any individual if:

(1) The individual performs the services in the first of the academic years or terms; and

(2) There is a contract or a reasonable assurance that the individual will perform services in any such capacity for any educational institution in the second of the academic years or terms.

(b)(1) With respect to services performed in any other capacity for an edu-cational institution, benefits shall not be paid on the basis of services to any individual for any week of unemployment that commences during a period between two (2) successive academic years or terms if:

(A) The individual performs the services in the first of the academic years or terms; and

(B) There is a reasonable assurance that the individual will perform the services in the second of the academic years or terms.

(2)(A) If compensation is denied to an individual under subdivision (b)(1) of this section and the individual was not offered an opportunity to perform the services for the educational institution for the second of the academic years or terms, the individual, if otherwise eligible, is entitled to a retroactive payment of compensation for each week for which the individual filed a timely claim for compensation and for which compensation was denied solely by reason of subdivision (b)(1) of this section.

(B) The individual shall apply for the retroactive payment described in subdivision (b)(2)(A) of this section within two (2) weeks after receipt of notification from the educational institution that he or she will not have an opportunity to perform the services at that educational institution in the second academic year or term.

(c) With respect to any services described in subsection (a) or (b) of this section, compensation payable on the basis of these services shall not be payable to any individual for any week of unemployment that commences during an established and customary vacation period or holiday recess if:

(1) The individual performs these services in the period immediately before a vacation or holiday recess; and

(2) There is a reasonable assurance that the individual will perform the services in the period immediately following the vacation period or holiday recess.

(d)(1) With respect to any services described in subsections (a) and (b) of this section, compensation payable on the basis of services in any such capacity shall be denied as specified in subsections (a)-(c) of this section to any individual who performed the services in an educational institution while in the employ of an educational service agency.

(2) For purposes of this subdivision, the term "educational service agency" means a governmental agency or governmental entity which is established and operated exclusively for the purpose of providing such services to one (1) or more educational institutions.

The question is whether Ms. Coleman rendered "service performed in an instructional ... capacity *for* an educational institution." Ark.Code Ann. § 11–10–509(a) (emphasis added). I conclude, as the Board did, that she did not.

Ms. Coleman did provide instructional services; however, she did not do so *for* an educational institution, but provided them *to* one. Ms. Coleman performed her services for her employer, SubTeach. It then contracted her services to the school district, and ultimately, to the school in which she was placed. Indeed, she was paid for her services by SubTeach. Thus, it seems clear to me that under the plain language of the statute, Ms. Coleman did not perform her services *for* an educational institution, and she was not precluded from receiving benefits under subsection (a).

But even if the language of the statute was considered ambiguous, which it arguably is, the statute read as a whole makes clear the General Assembly's intent that subsection (a) of the statute applies to employees of educational institutions. Section 11–10–509, is plainly entitled "Eligibility—Employees of educational institutions." [1] While a statute's title is not controlling in its construction, it is considered in determining its meaning when such meaning is otherwise in doubt and may only be examined for the purpose of shedding light on the intent of the legislature. *See K.C. Props. of Nw. Arkansas, Inc. v. Lowell Inv. Partners, LLC*, 373 Ark. 14, 280 S.W.3d 1 (2008). Here, there can be no doubt that the legislature's intent was for the statute to apply to employees of educational institutions. But in addition, a review of the entire statute makes the legislature's intent even more clear.

The legislature's intent is further evidenced by the presence of subsection (d), which precludes benefits to "any individual who performed the services *in* an educational institution while in the employ of an educational service agency." Ark.Code Ann. § 11–10–509(d)(1) (emphasis added). Clearly, the General Assembly contemplated that one might provide such services

---

1. SubTeach claims in its brief that the title of the statute has changed, it cites to no authority for that change, nor can any be found. The official Arkansas Code maintains the title set forth above, and no amending acts or code revisions relating to the statute contain· any such change. While the statute when obtained from Westlaw, a legal research company, includes a different title, the most recent version and code service reference to the statute contained within the official code maintain the title set forth above. *See* Ark.Code Ann. § 11–10–509 (Supp. 2009 & 2010–11 Advance Code Service, pamphlet no. 1).

while not employed by the educational institution and took measures to specifically preclude benefits to those persons not employed by an educational institution, but employed by an educational service agency.[2] While the General Assembly could have similarly taken measures to preclude employees of companies contracting with the school districts to provide such services, it did not. Accordingly, subsection (d) further evidences the General Assembly's intent that subsection (a) contemplated those persons providing services for an educational institution while under the institution's employ. *See also* Op. Att'y Gen. # 2005–174 ("Arkansas Code Annotated § 11–10–509(a) provides that employees of educational institutions are not eligible for unemployment compensation benefits during certain time periods.").

The majority, by agreeing with SubTeach's interpretation of subsection (a) that it precludes anyone who provides instructional services to an educational institution, regardless of employer, from receiving benefits, has rendered subsection (d) superfluous and obsolete. Such a reading contravenes our prior holdings that a statute should be construed so that no word is left void, superfluous, or insignificant; and meaning and effect must be given to every word in the statute if possible. *See Brookshire v. Adcock,* 2009 Ark. 207, at 5, 307 S.W.3d 22, 26 (2009).

For the foregoing reasons, I dissent and would affirm the Board of Review's decision.

---

**2.** An "educational service agency" is defined as "a governmental agency or governmental entity which is established and operated exclusively for the purpose of providing such services to one (1) or more educational institutions." Ark.Code Ann. § 11–10–509(d)(2).

James Cole, the president of SubTeach, testified that it was not a governmental agency. Record, at 11–12. Thus, Ms. Coleman was not precluded from receiving benefits under subsection (d).