Sheila BECK *v.* DIRECTOR, Arkansas Employment Security Department and Batesville Nursing and Rehabilitation Center

E 98-51                                     987 S.W.2d 733

Court of Appeals of Arkansas
Division III
Opinion delivered January 13, 1999

*Walmsley & Weaver*, by: *Tim Weaver*, for appellant.

*Allan Pruitt*, for appellee.

MARGARET MEADS, Judge. Sheila Beck appeals the decision of the Board of Review reversing the Appeal Tribunal's determination that she was discharged from last work for reasons other than misconduct connected with the work. On appeal, she contends that there is not substantial evidence to support the Board's finding of misconduct. We disagree; therefore, we affirm.

On appeal, this court reviews the findings of fact of the Board of Review in the light most favorable to the prevailing

party, only reversing where the findings are not supported by substantial evidence. *McKissick v. Director*, 61 Ark. App. 266, 966 S.W.2d 921 (1998). Substantial evidence is such evidence that a reasonable mind would find adequate to support a conclusion. *Id.* Even when there is evidence upon which the Board might have reached a different decision, the scope of judicial review is limited to a determination of whether the Board could reasonably reach its decision upon the evidence before it. *Perdrix-Wang v. Director*, 42 Ark. App. 218, 856 S.W.2d 636 (1993).

Appellant is a licensed practical nurse who worked as a charge nurse for Batesville Nursing and Rehabilitation Center (hereinafter "Center") from February 2, 1996, until she was terminated on August 6, 1997, for violating the Center's policy regarding the dispensation of narcotics. At the hearing before the appeal officer, the Center's administrator testified that in-service instruction regarding the proper dispensation of narcotics had been given on July 24, 1997. The Center's procedure for documenting narcotics requires the nurse to sign out the medicine in the narcotic book, noting both the date and the time, and to then give it to the patient. However, the administrator learned on August 4 that appellant was not documenting the medication as she gave it; rather, she would wait until the end of her shift and then attempt to document all the medication she had administered. Appellant was suspended from her job at that time; she was terminated two days later.

Appellant admitted to the administrator that she had not documented the medication she had given on August 4 until the end of her shift, and that she could not remember to whom she had given medication. Additionally, on August 1, appellant had failed to consult a patient's chart prior to dispensing Darvocet, which resulted in the patient receiving the medication at the incorrect time. The administrator testified that an employee could be terminated after one offense for this type of error because such actions could endanger a patient's life.

Appellant acknowledged in her testimony that she had improperly signed out narcotics on August 4, but she claimed there were extenuating circumstances. A key had been broken off

in the lock on the closet where medicine carts were kept, and it took three hours to open the door. Appellant said she was so far behind by the time she obtained her medicine cart that she simply wrote down the medications on a piece of paper so that she knew where each medication had gone. In response to the statement that she told the administrator she did not know where the medicine had gone, appellant stated that she told him that she could not tell him "off the top of [her] head," and that she would have to look at the record. She claimed she had been able to account for all of the medications she had administered on August 4 at the end of her shift. With regard to the August 1 medication error, appellant admitted that she had failed to look at the patient's chart and had given the Darvocet at the wrong time, but she denied that she had administered a double dose of medication.

Appellant testified that other nurses documented their medications at the end of their shifts and no action had been taken against them. She did not know if the administrator knew of this practice or not, though she asserted that the director of nursing knew of this practice. Two former employees testified on behalf of appellant and attested to the practice of nurses at the Center signing out their medications at the end of their shifts; however, neither of these persons worked for the Center at the time appellant was fired.

The current administrator testified that the fact appellant received her medicine cart three hours late was no reason to fail to properly sign out the medications. He further stated that he knew of no other nurse who recorded her medications at the end of her shift, and if he had known, he would have terminated her as well.

■ "Misconduct," for purposes of unemployment compensation, involves: (1) disregard of the employer's interest, (2) violation of the employer's rules, (3) disregard of the standards of behavior which the employer has a right to expect of his employees, and (4) disregard of the employee's duties and obligations to his employer. *Greenberg v. Director*, 53 Ark. App. 295, 922 S.W.2d 5 (1996). There is an element of intent associated with a determination of misconduct; mere inefficiency, unsatisfactory conduct, failure of good performance as the result of inability or incapacity,

inadvertencies, ordinary negligence, or good-faith errors in judgment or discretion are not considered misconduct for unemployment insurance purposes unless it is of such a degree or recurrence as to manifest culpability, wrongful intent, evil design, or an intentional or substantial disregard of an employer's interest or of an employee's duties and obligations. *Kimble v. Director*, 60 Ark. App. 36, 959 S.W.2d 66 (1997).

Appellant argues that her conduct cannot be considered anything more than a good-faith error in judgment or, at worst, unsatisfactory conduct, but it cannot be considered misconduct. We disagree. Appellant was provided in-service training regarding narcotics dispensation just ten days before the August 4 incident, and she admitted that she had not followed the required procedure. Furthermore, appellant had given Darvocet to a patient at the wrong time because she had failed to look at the patient's chart. A patient's well-being depends upon the proper dispensation of medication, and a strict procedure for signing out medicine ensures that a proper and timely record is kept for each patient. Moreover, it is imperative to review each patient's chart to see if the physician's orders have changed.

Appellant's actions constituted not only a violation of the employer's rules, but a disregard of the employer's interest, a disregard of the standards of behavior which the employer has a right to expect of its employees, and a disregard of the employee's duties and obligations to her employer. Consequently, there is substantial evidence to support the Board's denial of benefits.

Affirmed.

ROBBINS, C.J., and BIRD, J., agree.