# ARKANSAS COURT OF APPEALS

DIVISION III
No. E-12-1003

| | |
|---|---|
| | **Opinion Delivered** September 11, 2013 |
| SUZANNE PROCTOR<br>APPELLANT | APPEAL FROM ARKANSAS BOARD<br>OF REVIEW<br>[NO. 2012-BR-00431] |
| V. | |
| DIRECTOR, ARKANSAS<br>DEPARTMENT OF WORKFORCE<br>SERVICES, AND CABOT SCHOOL<br>DISTRICT | |
| APPELLEES | AFFIRMED |

**BRANDON J. HARRISON, Judge**

Suzanne Proctor appeals the Board of Review's order that denied her unemployment benefits. We affirm.

In September 2011, Proctor was employed by the Cabot School District as the school principal for Northside Elementary School. On September 1, 2, and 6, Proctor was absent from work and did not get prior approval from her employer for the absences. On September 9, Cabot Public School District Superintendent Tony Thurman notified Proctor that she was being suspended without pay and that he intended to recommend that her employment contract with the Cabot School District be terminated. The Cabot School Board later terminated Proctor's employment. Proctor appealed that termination to the Lonoke County Circuit Court, which affirmed the school board's findings and the termination. This court

has affirmed the circuit court's order. *See Proctor v. Cabot Sch. Dist.*, 2013 Ark. App. 366.

Proctor eventually applied for unemployment-insurance benefits. In November 2011, Proctor received a Notice of Agency Determination from the Arkansas Department of Workforce Services, telling her that she was disqualified from unemployment benefits because she had been discharged for misconduct connected with her work. Proctor appealed this determination to the Arkansas Appeal Tribunal, which conducted a telephone hearing in January 2012.

During the hearing, Jim Dalton, the Assistant Superintendent for the Cabot School District, testified that Proctor was discharged because she was absent from work on September 1, 2, and 6 without notifying her employers; that the office manager and the assistant principal were also out two of those three days, which left the children and teachers without adequate supervision; and that Proctor had been an employee of the district for over nine years and knew that the proper procedure was to contact the superintendent's office to get approval if she was going to be absent. Dalton also said that employees were previously given verbal and written reminders of this policy. Specifically, a January 2011 memo from the superintendent reminded principals that it was "imperative" to notify the central office if they would be out of their building for an extended period of time, meaning more than half a day. Proctor had followed this procedure in the past, showing that she was familiar with it.

On cross-examination, Dalton acknowledged that Cabot School District personnel policies are required to be in writing and promulgated by the school board. Regarding the policy requiring principals to notify someone before taking leave, Dalton cited Policy 3:28,

which discusses personal business leave days for certified employees and states that "the building principal should approve the use of personal business days prior to the absence." Dalton explained that a principal should notify the superintendent or assistant superintendent before an absence, but that there was no specific written policy to that effect. Dalton also explained that the school district had a number of disciplinary actions to choose from, ranging from verbal warnings to termination, but that there was not a progressive discipline policy. Instead, the school district would "look at each offense and decide which is appropriate."

When questioned by the hearing officer, Dalton testified that no one could approve their own time off. He also said that he and Thurman met with Proctor on September 7, the day she returned to work, and told her that her actions were inappropriate. Only then did Proctor complete a personal-leave request for the days missed. When asked why she had not sought preapproval, Proctor told Dalton that she made a mistake.

Proctor testified that she turned in a leave slip after she returned to work. She explained that she

> had five personal days already accumulated. I'd not asked for any personal leave since I can't tell you when. So when I got back and realized that that was what the policy stated, that's when I told him that, that I should have told him prior to. But I thought that with me coming back and filling out the paperwork, that would be sufficient.

Proctor argued that no written policy required her to notify anyone before taking leave and that, in nine years, she had never been disciplined. She acknowledged that Thurman and Dalton were her supervisors and that she had not told them that she would be gone because "it was personal leave" and she was "not familiar with that." Proctor also pointed out that

3

two secretaries, a counselor with administrative experience, and a parent volunteer were in the office during her absence and that she kept in touch with them by text messaging and telephone. When asked why she did not stay in touch with the superintendent or assistant superintendent, Proctor said: "[A]ll I know is that it was a mistake. I mean, I—I didn't—I didn't do what they wanted me to do. It was a mistake." And she acknowledged that Dalton had previously approved her leave for vacation.

The Appeal Tribunal upheld the initial denial of benefits because it concluded that Proctor acted in deliberate disregard of standards of behavior the employer had a right to expect from her. Proctor appealed to the Board of Review. The Board affirmed the denial, reasoning, among other things, that

> [t]he claimant has argued that she should not be deemed ineligible for benefits in the absence of a bona fide written attendance policy with progressive warnings . . . *and* misconduct in the form of wrongful intent or evil design[.] Neither of these elements were found by the Appeal Tribunal following the hearing, and the Board concurs in that finding.

> . . . When the claimant failed to get approval from the employer's central office before leaving on vacation to Florida, she left her school's office inadequately staffed, in disregard of district policy requiring an administrator to be present at the school on "student contact" days. These actions reveal a disregard of the employer's interests, a violation of the employer's rules, and disregard both of the standards of behavior which the employer has a right to expect of its employees, and of the employee's duties and obligations to his employer.

(Emphasis in original.)

Proctor now asks us to reverse the Board of Review, whose findings we must view in a favorable light and whose denial we must affirm if it is supported by substantial evidence. *Rodriguez v. Dir.*, 2013 Ark. App. 361. Substantial evidence is relevant evidence that a

4

reasonable mind might accept as adequate to support a conclusion. *Id.* Even when there is evidence upon which the Board might have reached a different decision, we ask only whether the Board reasonably could have reached the decision that it did given the evidence before it. *See id.* We do not, however, rubber stamp the Board's decisions. *See id.*

Proctor was denied unemployment benefits because she was discharged for misconduct. "Misconduct" involves disregard of the employer's interest, violation of the employer's rules, disregard of the standards of behavior the employer has a right to expect of its employees, and disregard of the employee's duties and obligations to the employer. *Price v. Dir.*, 2013 Ark. App. 205, at 2. For purposes of unemployment insurance, misconduct requires more than mere inefficiency, unsatisfactory conduct, failure in good performance as a result of inability or incapacity, inadvertencies, ordinary negligence in isolated instances, or good-faith errors in judgment or discretion. *Id.* To conclude that there has been misconduct for unemployment-insurance purposes, we have long required an element of intent. Mere good-faith errors in judgment or discretion and unsatisfactory conduct are not misconduct— unless they are of such a degree or recurrence as to manifest culpability, wrongful intent, evil design, or an intentional or substantial disregard of an employer's interest. *Beck v. Dir.*, 65 Ark. App. 8, 987 S.W.2d 733 (1999).

We affirm the Board's denial of benefits. Proctor disregarded her employer's interest in knowing who was in charge of the school, and her unapproved absences violated the standard of behavior the employer had a right to expect from a principal in its district, or so the Board could have reasonably concluded in this case.

Affirmed.

GLADWIN, C.J., and WALMSLEY, J., agree.

*The Robertson Law Firm*, by: *Charles Finkenbinder*, for appellant.

*Phyllis A. Edwards*, for appellee.